WILLIAM J. HOLDEN and another *vs.* CHARLES A. UPTON.

Middlesex. Nov. 23, 1882. — Jan. 8, 1883. DEVENS & HOLMES, JJ., absent.

The treasurer of a savings bank, by virtue of his office merely, has no implied authority to transfer to a purchaser a promissory note belonging to the bank.

The receivers of a savings bank, which has illegally invested its deposits in a promissory note bearing the name of but one promisor, may maintain a bill in equity, against a person who is in possession of such note through an abuse of power by the treasurer of the bank, to compel the surrender of the note.

BILL IN EQUITY, filed January 8, 1880, by the receivers of the Reading Savings Bank, to restrain the defendant from prosecuting actions at law upon, and to compel the delivery to the plaintiffs of, certain promissory notes in the defendant's

possession. The answer, among other things, alleged careless-
ness and negligence on the part of the trustees of the bank in
the performance of their duties. Hearing before *W. Allen*, J.,
who reported for the consideration of the full court the follow-
ing case:

It appeared that the notes in question were received by the
bank for money borrowed of the bank, and remained in the bank
as part of its assets for several years, until on or about May 1,
1878, when they were transferred to the defendant by Nathan
P. Pratt, the treasurer of the bank, at its banking-house; that
the defendant paid the money therefor to Pratt, who indorsed
his own name on the back of the notes; that similar notes in
amount and appearance were substituted by some person, among
the notes and other securities of the bank, simulated so as to
deceive the trustees of the bank; that neither the trustees nor
the committee of investment of the trustees had any knowledge
of the sale of the notes.

There was no evidence produced by the defendant to sustain
that part of his answer alleging negligence or carelessness on
the part of the trustees. No authority was shown to have been
given to Pratt to sell or indorse the notes; and there was evi-
dence tending to show that Pratt had fraudulently sold and as-
signed many other notes, and the mortgages securing the same,
to other parties, without the consent or knowledge of the trus-
tees; and that there had been placed in the bank, among its
securities, duplicate forged notes and mortgages.

There was no evidence that Pratt had accidentally omitted
to indorse the notes as treasurer of the bank, except the fact
that he had not so done, but had indorsed upon each and all of
them his individual name.

If, upon these facts, the bill could not be maintained, it was
to be dismissed; otherwise, a decree was to be entered against
the defendant, directing the delivery of the notes to the plain-
tiffs and the withdrawal of all suits thereon.

*B. F. Butler*, (*S. Bancroft* with him,) for the plaintiffs.

*G. A. A. Pevey*, (*E. A. Upton* with him,) for the defendant.

C. ALLEN, J. The report finds that no authority was shown
to have been given to the treasurer to sell or indorse the notes
in controversy; that neither the trustees nor the committee of

investment had any knowledge of the sale; and that the defend-
ant produced no evidence to sustain the averments of the answer
as to any negligence or carelessness on the part of the trustees,
whereby the treasurer was permitted by them for a long space
of time to deliver and indorse the notes belonging to the corpo-
ration, in behalf of the corporation, to innocent parties, and to
transact the general business of the bank according to his will
and pleasure. There was no averment or proof of any general
usage of savings banks to allow their treasurers to transfer notes.
The question, therefore, presented by this case is, whether, in
the absence of any actual authority, by statute, charter, by-law,
vote, oral permission, understanding or assent, and of any usage
of savings banks in general or of this particular bank, the treas-
urer, merely by virtue of his office, had an implied power to
transfer to a purchaser the notes of the institution. No case is
cited by counsel, and, after some research, we have found none,
in which it has been held that he has such power; and, on
principle, we have come to the conclusion that it is a safer and
better rule to hold that he has not.

No doubt emergencies may arise, in the experience of a sav-
ings bank, in which it may be desirable or necessary to part
with notes owned by it, and realize their value in money, before
their maturity. It is however true, as a general proposition,
that it is no part of the design of such an institution, ordinarily
and as a part of its regular business, to trade in notes. *Com-
monwealth* v. *Reading Savings Bank*, 133 Mass. 16. According
to the custom, which we believe to be universal, and which is
recognized in the statutes, (Pub. Sts. *c.* 116, § 21,) each savings
bank has a board of investment or investing committee, consist-
ing of a certain number of its trustees, who are immediately and
primarily responsible for the safe investment of its funds accord-
ing to law. There is no specific statement or enumeration, in
the statutes, of the powers and duties of the treasurer; but it is
obvious that these will have reference to the nature of the things
to be done by him in the ordinary course of the business of the
institution. And while it is no doubt true that occasions may
arise for a different practice, yet, according to the theory, and
also as we believe to the custom, of savings banks, investments
in notes are usually made with a view to· holding them until

their maturity, or at least without the expectation of frequent changes by sale.

The view which we take of this question does not trench at all upon the doctrine, that the authority of agents or officers of a corporation need not appear by vote, and that the public, in dealing with such agents or officers, may safely confide in the existence of such authority, not inconsistent with the charter, as is openly and habitually exercised. *Lester* v. *Webb*, 1 Allen, 34. *Case* v. *Bank*, 100 U. S. 446, 454. Nor need it cast any doubt upon the authority of a treasurer of a savings bank, who usually receives payment of notes due to the corporation, to surrender to the makers of notes, which are paid, such collateral securities as may be held therefor, and to execute such transfers as may be necessary to revest the property in the original owners.

It is next contended, on the part of the defendant, that the notes in question bore the name of but one promisor, and that they were not such notes as savings banks may lawfully take; and it is urged that therefore no remedy exists against the defendant, even if the act of the treasurer was unauthorized or fraudulent. But this argument overlooks the true nature of the question. We are not to consider whether the trustees, under such circumstances, might be held amenable to any legal consequences. But the deposits are trust funds, held for the benefit of the depositors. If, by intentional evasion of the statutory requirements, or by looseness of practice or inadvertence, improper investments of these or any other trust funds are made, the trust nevertheless attaches to the investments; and the remedy, either of the trustees or of the *cestuis que trust*, in availing themselves of the security so improperly taken, is not impaired by the breach of trust. If a trustee has lent trust money in an unauthorized manner, he not only may recover it back from the borrower, but it is his duty to do so. *Payne* v. *Collier*, 1 Ves. Jr. 170. *Greenwood* v. *Wakeford*, 1 Beav. 576. *Fuller* v. *Knight*, 6 Beav. 205, 211. *Bancroft* v. *Consen*, 13 Allen, 50. This doctrine applies to the present case. *Farmington Savings Bank* v. *Fall*, 71 Maine, 49. *National Pemberton Bank* v. *Porter*, 125 Mass. 333.

A bill in equity is the proper remedy. See next case.

*Decree for the plaintiffs.*