# LEECH Et Al. *v.* ARMSTRONG Et Al.

## No. 2862 and No. 2862A

January 3, 1930.                    283 P. 396.

*Clyde D. Souter,* for Plaintiffs:

*Brown & Belford,* for Defendants:

## OPINION

By the Court, COLEMAN, J.:

Leech and Mackie instituted this action to recover judgment in the sum of $10,318.15, a balance alleged to be due from the defendant Armstrong for work and labor performed.

This litigation grew out of this state of facts: On October 10, 1922, the highway department of the State of Nevada, hereinafter referred to as the highway department, entered into a contract with Armstrong, designated contract 65, whereby it was agreed: " * * * The party of the first part (highway department) hereby purchases of and from the party of the second part (Armstrong), and the party of the second part hereby sells and agrees to deliver to the party of the first part * * * the quantities of crushed rock as set forth in the following schedule: * * * It is agreed that the material to be secured from the proposed quarry site leased by the department at Vista meets the specifications and is satisfactory as to quality."

The contract contains provisions for the erection by Armstrong at or near Vista siding, in Washoe County, of a crushing plant of sufficient capacity to crush 300 tons per day, and that Armstrong should load such crushed rock on board cars for a certain sum per ton.

The contract further provides that, in case of the failure of Armstrong to deliver crushed rock at the rate and in quantities provided for, the highway department might declare the contract forfeited. It also contains a provision against subletting except with the written consent of the highway department.

Armstrong erected his crushing plant and for a time delivered crushed rock. He then entered into a subcontract with the plaintiffs whereby they agreed to deliver the crushed rock at a price per ton considerably less than that to be paid Armstrong.

The contract between plaintiffs and Armstrong, by its

terms, incorporated into it all of the provisions of the contract between Armstrong and the highway department.

The defendant bonding company was made a party because of the fact that it was surety on Armstrong's bond.

Pursuant to said subcontract, the plaintiffs took possession of the crusher and outfit, and for a time operated it and delivered the crushed rock on board the cars as provided in the original contract. Later, failing to make delivery as provided in said contract, the highway department declared the contract forfeited.

The plaintiffs instituted this action to recover for the alleged value of the work and labor performed in crushing and delivering the rock that was delivered, rather than on the contract between them and Armstrong. Armstrong filed an answer denying all liability and pleaded a counterclaim based upon the contract, alleging damage as a result of the failure of the plaintiff to make delivery of the rock as agreed, and also sought to recover for money paid out on behalf of plaintiffs.

The defense of the bonding company is substantially the same as that of Armstrong.

From a judgment against the plaintiffs and in favor of Armstrong on his counterclaim in the sum of $1,970.18, all of the parties have appealed. Further details will be stated herein.

■ Armstrong has moved to dismiss the appeal of plaintiffs from the order denying their motion for a new trial, on the ground that such appeal was not taken until after the appeal from the judgment was taken. In support of the motion, reliance is had upon Rev. Laws, sec. 5328, which reads:

"Where the appeal is based upon the ground that the evidence is insufficient to justify the verdict or decision of the court, or to support the findings, or upon alleged errors in ruling upon the evidence, or upon instructions claimed to be erroneous, a motion for a new trial must be made and determined before the appeal is taken. In all other cases the party aggrieved may appeal with or

without first moving for a new trial; but by appealing without first moving for a new trial, the right to move for a new trial is waived."

It will be observed that this section provides that certain appeals cannot be taken until *after* a motion for a new trial is made and determined. The section then provides: "In all other cases the party aggrieved may appeal with or without first moving for a new trial; but by appealing without first moving for a new trial, the right to move for a new trial is waived."

We are of the opinion that it was the intention of the legislature that the waiver provided for contemplated only those cases not mentioned in the first sentence of the section, but "all other" cases. In other words, a party is given the option in certain cases to appeal without making a motion for a new trial. If he appeals without first making a motion for a new trial, he waives the right to do so upon the grounds enumerated in the first sentence of the section, but does not waive the right to make a motion for a new trial on one or more of the grounds not designated in the first sentence.

For the reasons given, the motion is denied.

■■ In considering this case on its merits, we must consider certain portions of the highway act (Stats. 1917, c. 169). Section 14 of this act, as amended (Stats. 1921, p. 6, c. 8), provides that, under certain conditions, the highway engineer may advertise for bids for the performance of certain work in improving of a highway. The section also provides that the successful bidder shall be required to furnish a bond, conditioned that the work shall be performed in accordance with the terms of the contract, "and conditioned as in this act provided."

Section 17 of the act provides that no contractor shall let any subcontract except upon the written permission and approval of the highway department.

It is the contention of the plaintiffs that, in view of the inhibition in the original contract between Armstrong and the highway department against subcontracting

without written approval, and the making of said original contract a portion of the subcontract, and the failure to procure written approval to such subcontract, said subcontract was void ab initio, and hence plaintiffs can recover upon the quantum meruit.

The learned trial judge rejected the contention of plaintiffs, and in so doing we think he was clearly right.

The provision in question was incorporated in the statute for the benefit of the state. The statute does not provide that a subcontract not so approved in writing shall be void. In this situation we think it is a condition which even the state may waive. In the instant case the highway department knew of the subcontract and accepted the crushed rock loaded upon the cars in pursuance of the terms of the contract and subcontract mentioned.

The highway act pertains to a department of the state in business and not in government. While the state of facts are not identical, we think the reasoning of the court in Way v. Pacific L. & T. Co., 74 Wash. 332, 133 P. 595, 49 L. R. A. (N. S.) 147, applies with equal force to the situation in hand. That was a case which grew out of a statute of Washington prohibiting the sale of insurance at less than the schedule rate and penalizing a company or agent violating it by revoking his license, and where insurance had been sold at less than the schedule rate. The court said:

"When a statute is * * * a regulation of a traffic or business, and not to prohibit it altogether, whether a contract which violates the statute shall be treated as wholly void will depend on the intention expressed in the particular statute. Unless the contrary intention is manifest, the contract will be valid."

In speaking of a similar statute, the Supreme Court of the United States said, in refusing to declare void an assignment prohibited by statute:

"Those mischiefs, as laid down in that opinion, and others referred to, are mainly two:

"First. The danger that the rights of the government might be embarrassed by having to deal with

several persons instead of one, and by the introduction of a party who was a stranger to the original transaction.

"Second. That, by a transfer of such a claim against the government to one or more persons not originally interested in it, the way might be conveniently opened to such improper influences in prosecuting the claim before the departments, the courts, or the Congress, as desperate cases, when the reward is contingent on success, so often suggest.

"Both these considerations, as well as a careful examination of the statute, leave no doubt that its sole purpose was to protect the government, and not the parties to the assignment." Goodman v. Niblack, 102 U. S. 556, 559, 26 L. Ed. 229.

A similar question was raised in a case in which it was urged that, since a national bank was prohibited from making a loan on real estate, the bank should be enjoined from foreclosing the mortgage. The Supreme Court of the United States, in disposing of the question, said:

"The court, while assuming that the statute, by clear implication forbade the bank from making a loan on real estate, refused to restrain the bank from enforcing the deed of trust. The decision went upon these grounds: That the bank parted with its money in good faith; that the question as to the violation of its charter by taking title to real estate for purposes unauthorized by law could be raised only by the government in a direct proceeding for that purpose; and that it was not open to the plaintiff in that suit, who had contracted with the bank, to raise any such question in order to defeat the collection of the amount loaned. If any doubt existed as to the scope of the decision in that case, it was removed by National Bank v. Whitney, 103 U. S. 99, 26 L. Ed. 443, where it was held that the right of a national bank to enforce a mortgage of real estate taken by it to secure indebtedness then existing, as well as future advances, could not be questioned by the debtor, and that a disregard by the bank of the

provisions of the act of Congress upon that subject only laid the association open to proceedings by the government for exercising powers not conferred by law." Schuyler National Bank v. Gadsden, 191 U. S. 451, 24 S. Ct. 129, 131, 48 L. Ed. 258.

The Court of Appeals in New York reached the same conclusion concerning a statute which declared that assignments under certain conditions "shall be absolutely void." The court says:

"In our opinion, a just construction of the statute does not invalidate the transfer of Witherby & Gaffney to the plaintiffs, nor will the objects of the statute be defeated by the construction that such a transfer, made in the legitimate and usual course of business, in good faith, to secure an honest debt, while it may be disregarded by the government, is good as between the parties, so far as to enable the transferee, after the government has paid over the money to the claimant, to enforce as against him, or those who take with notice, the interest or lien given by the assignment. The fact that the government may refuse to recognize any transfer or assignment, in connection with the general principle of law which avoids all agreements contrary to public policy, will be a sufficient discouragement to illegitimate transactions, or, at all events, it is all the law can justly interpose, having due regard to the exigencies of business and the protection of innocent parties. The Supreme Court of Massachusetts in Jernegan v. Osborn, 155 Mass. 207, 29 N. E. 520, reached substantially the same conclusion as that to which we have arrived." York v. Conde, 147 N. Y. 486, 42 N. E. 193, 196.

"One of these rules is that an act declared to be void by statute which is malum in se or against public policy is utterly void and incapable of ratification, but an act or contract so declared void, which is neither wrong in itself nor against public policy, but which has been declared void for the protection or benefit of a certain party, or class of parties, is voidable only and is capable of ratification by the acts or silence of the beneficiary

or beneficiaries. A conveyance in fraud of creditors was declared to be 'utterly void, frustrate, and of none effect,' by the statute of 13 Eliz. c. 5, and has been uniformly declared to be void by the statutes of the states. But such a conveyance is universally held to be voidable only, to be valid until avoided, to be voidable by the creditors alone, and to be capable of ratification by them. (Citing authorities.) A gift of goods declared by statute to be void as to creditors is voidable only, may be avoided by them alone, and is susceptible to ratification. Snow v. Lang, 2 Allen (Mass.), 18. And a preference of a creditor within 60 days of insolvency declared to be void as to creditors by statute is voidable only, is capable of ratification by the creditors, is valid until avoided by them, and may be avoided by them alone." Westerlund v. Mining Co. (C. C. A.), 203 F. 599, 611.

In discussing the prohibition of the federal statute against national banks holding real estate as security, the United States Supreme Court says:

"The statute does not declare such a security void. It is silent upon the subject. If Congress so meant, it would have been easy to say so; and it is hardly to be believed that this would not have been done, instead of leaving the question to be settled by the uncertain result of litigation and judicial decision." Union National Bank v. Matthews, 98 U. S. 621, 627, 25 L. Ed. 188.

In discussing the validity of a lease from one lighting company to another, which was prohibited by statute, the New York Court of Appeals says:

"We think the demands of public policy are fully satisfied by holding that, as to the public, the lease was void, but that, as between the parties, and so long as the occupation under the lease continued, the lessee was bound to pay the rent, and that its recovery may be enforced by action on the covenant." Bath Co. v. Claffy, 151 N. Y. 24, 45 N. E. 390, 393, 36 L. R. A. 664.

The Supreme Judicial Court of Massachusetts, in considering the same question in Bowditch v. New England M. L. I. Co., 141 Mass. 292, 4 N. E. 798, 801, 55 Am. Rep. 474, said:

"The Revised Statutes of the United States respecting national banks, provide that a bank shall not lend to any one person, corporation, or firm a sum exceeding one-tenth part of the capital stock actually paid in, and that national banks shall not take real estate as collateral security except for debts previously contracted; and it has been repeatedly held that contracts made in contravention of the statute were not void. Gold Min. Co. v. National Bank, 96 U. S. 640 [24 L. Ed. 648]; National Bank v. Matthews, 98 U. S. 621 [25 L. Ed. 188]; National Bank v. Whitney, 103 U. S. 99 [26 L. Ed. 443]; Reynolds v. [Crawfordsville] National Bank, 112 U. S. 405, 5 S. Ct. 213 [28 L. Ed. 733].

"When the officers of a savings bank invest its funds in a manner forbidden by statute, such illegal action of the officers does not impair the validity of the investment. Holden v. Upton, 134 Mass. 180.

"Many other cases might be cited in which it has been held that contracts made in violation of the provisions of statutes are not void, upon the ground that the statutes are intended merely to be directory to the officers or persons to whom they are addressed, and not to be conditions precedent to the validity of contracts made in reference to them. Each statute must be judged by itself as a whole, regard being had, not only to its language, but to the objects and purposes for which it was enacted. If the statute does not declare a contract made in violation of it to be void, and if it is not necessary to hold the contract void in order to accomplish the purpose of the statute, the inference is that it was intended to be directory, and not prohibitory of the contract."

See, also, In Re Long Acre E. L. & P. Co., 188 N. Y. 361, 80 N. E. 1101; Potts v. Benedict, 156 Cal. 322, 104 P. 432, 25 L. R. A. (N. S.) 609; Chilson v. Cavanagh, 61 Okl. 98, 160 P. 601, L. R. A. 1918D, 1044.

■ It is urged by counsel for the defendants that section 17 of the highway act is not involved, since that section pertains only to contracts for "improvements, construction, or maintenance," while the contract in question was one calling for neither, but for the delivery of rock. While there seems to be some force to

this contention, we do not find it necessary to determine the point, in view of the conclusion expressed, unless we should hold, as contended by plaintiffs, that section 2, c. 129, Stats. 1921, is an amendment of the highway act and by its terms declares contracts of the character in question to be void because of the failure of the approval of the subcontract in writing by the highway department.

This contention is lacking in merit. Upon a careful inspection of the title of the original (Stats. 1919, c. 168) and amendatory acts (Stats. 1921, c. 129), we find that neither purport to amend the highway act, but provides solely for the giving of preference to certain classes of persons in public positions and on public works.

Taking these views, we feel that the rights of the parties must be determined pursuant to the terms of the contract in question, and that on no theory could the plaintiffs maintain a cause of action on the quantum meruit for work and labor performed.

■ We are now confronted with the question raised by the defendant Armstrong in his appeal, wherein he contends that the trial court should have given judgment in his favor for damages sustained by him for failure of the plaintiffs to deliver all of the crushed rock called for under the contract and subcontract, in addition to the judgment in his favor for money paid, laid out, and expended by him on behalf of the plaintiffs. The amount thus claimed by Armstrong is the difference between what he would have received from the highway department and what he would have paid the plaintiffs had they fully performed according to the terms of the contract.

Armstrong contends that the agreement in question was one of sale pursuant to section 67 of the uniform sales act (Stats. 1915, p. 194, c. 159), and hence the law of sales controls in determining the measure of his damage, citing Williston on Sales (2d ed.), sec. 599B.

If the contract in question were one of sale, the contention would probably be well founded. While we do not deem it necessary to determine, and do not determine, the question, but, in view of the fact that we are

referred to no authorities bearing upon the question, we direct attention to Parsons v. Loucks, 48 N. Y. 17, 8 Am. Rep. 517, and the cases cited therein; Gilbert v. Copeland, 22 Ga. App. 753, 97 S. E. 251; Associated Newspapers v. Phillips (C. C. A.), 294 F. 845; Marshall v. Louisiana, etc., 144 La. 828, 81 So. 331; Smith v. New York Cent. R. R. Co., 43 N. Y. (4 Keyes) 180; and Cooke v. Millard, 65 N. Y. 352, 22 Am. Rep. 619.

But counsel for Armstrong says, if it be a contract for work and labor instead of for a sale, the same measure of damages controls. In this contention we think counsel are correct.

Mr. Sutherland, in his work on Damages, lays down the rule as follows: "Where a party has contracted to perform labor from which a profit is to spring as a direct result of the work done at a contract price, and is prevented from earning this profit by the wrongful act of another party, his loss is a direct and natural result which the law will presume to follow the breach of the contract; and he is entitled to recover it without special allegations in his declaration. This he will be entitled to establish by showing how much less than the contract price it will cost to do the work or perform the contract." Vol. 1 (4th ed.), sec. 66.

This was accepted as the correct rule by this court in Bradley v. N. C. O. Ry. Co., 42 Nev. 411, 178 P. 906.

While counsel for plaintiffs has urged certain rules of statutory construction which we have not considered, what we have said disposes of the case.

Taking these views, it is ordered that the judgment and order appealed from by the plaintiff be affirmed, and that the trial court amend the judgment and order appealed from by the defendant Armstrong, denying him damages, to conform to the views herein expressed.

### On Petition for Rehearing

May 1, 1930.                                    287 P. 174.

By the Court, COLEMAN, J.:

Counsel for Leach and Mackie has presented a petition in which several points are urged as grounds for a

rehearing, but we deem it necessary to consider but two of them.

It is said that the rule as to the measure of damage laid down does not apply to the facts presented. The lower court found from the evidence as follows: "That at all times from and after the time when the plaintiffs took possession of the crushing plant and rock quarry under their said contract with the defendant Armstrong, of May 14, 1923, it was impossible for the defendant M. P. Armstrong to procure rock of the kind and character required by said Contract No. 65 between the defendant Armstrong and the State of Nevada, and to deliver the same to the State of Nevada, Department of Highways, on cars at Vista Siding, Nevada, for a sum less than $1.46½ per ton of crushed rock, except such rock as was delivered to defendant Armstrong by plaintiffs under the terms of the said contract or agreement of May 14, 1923."

We think the evidence not only sustains this finding, but that no other finding could be made from the evidence. Under this finding of fact the rule stated controls.

Counsel seems to construe our opinion as holding that the Statute of 1919, c. 168, as amended (Stats. 1921, c. 129), does not apply to contracts pertaining to construction of highways.

We never intended so to hold. All that we intended to hold was that the statute in question does not amend section 17 of the highway act (Stats. 1917, c. 169, sec. 17) so as to produce the results contended for by the plaintiffs. Our opinion must be construed solely in the light of the situation presented and of the contentions made. After a careful consideration of the points urged in the petition, we are convinced that it is without merit.

It is ordered that the petition for a rehearing be denied, and that a remittitur issue instanter.