ROY HILTON, as Administrator of the Estate of Gertrude Hilton, Deceased, Respondent, v. LEWIS HYMERS, Appellant.

No. 3166

March 1, 1937.                                        65 P. (2d) 679.

*Thomas F. Ryan,* for Appellant:

*L. D. Summerfield* and *A. Ross Schindler,* for Respondent.

394

## OPINION

By the Court, COLEMAN, C. J.:

This is an action to recover damages alleged to have been sustained by reason of the death of Gertrude Hilton, wife of Roy Hilton, due to injuries received in an automobile accident at the intersection of Arlington avenue and Taylor street in Reno.

The complaint, in the first count, charges the defendant with ordinary negligence, and in the second with willfulness, wantonness, and malice.

The defendant in his answer, denied the allegations of negligence contained in both counts of the complaint, and pleaded contributory negligence on the part of deceased.

In view of the fact that the trial court found against the plaintiff on the second count, we will make no further reference to it.

The case was tried to the court. Judgment was rendered in favor of plaintiff on the first cause of action, from which, and an order denying a motion for a new trial, the defendant has appealed.

The parties will be referred to as in the lower court.

Arlington avenue runs north and south, and Taylor street runs east and west.

It is the theory of the plaintiff that the deceased, while driving her car, entered the intersection in the exercise

of due care; that she had the right of way, had actually passed beyond the center of Arlington avenue, and turned to the north, and while thus occupying the intersection, the defendant entered said intersection in his automobile, traveling at more than sixty miles per hour and without exercising care to observe the presence of the deceased, and in so doing caused the injury resulting in her death.

The court found that the accident was caused solely by the negligence of defendant, and that deceased was not guilty of contributory negligence. It made many other specific findings, some of which we will refer to.

Defendant assigns seven errors as grounds for a reversal of the judgment and order appealed from, all in substance being that the evidence is insufficient to justify the judgment, save one, which is that the damages awarded are excessive.

■ Counsel for appellant, preliminary to the presentation of his main discussion, says that as a general proposition, in a damage suit negligence on the part of the defendant is not presumed from the mere fact of injury, citing 45 C. J. pp. 1148, 1149. We have always understood such to be the general rule to which there are exceptions. Counsel for the plaintiff concedes the correctness of the statement, and in the trial of the case called several witnesses to prove that the accident in question was due to the negligence of the defendant.

There is no testimony by Mrs. Hilton, she having died shortly after the accident.

■ Viewing the testimony in the case as we do, and having in mind the well-known general rule to the effect that where the evidence is conflicting and there is substantial evidence to support the judgment there will be no reversal [Butzbach v. Siri, 53 Nev. 453, 5 P. (2d) 533], we see little reason for reviewing the evidence in this case, except for the apparent seriousness with which the appeal is prosecuted.

There are no stop signs at the intersection in question,

and the city ordinance limits the speed of automobiles in that vicinity to twenty miles per hour, and in intersections to twelve miles per hour.

Let us now inquire if there was substantial evidence to sustain the finding that deceased was in the exercise of due care at the time of the accident.

H. J. Day testified that on the afternoon of the accident he was in the rear end of his lot, which is on the south side of Taylor street and the west side of Arlington avenue, facing Arlington avenue; that while he was there deceased passed, going along Taylor street in an easterly direction, at about fifteen miles per hour; that after she passed he went over and turned on the water, then went and picked up the hose, and was watering the grass when he heard a noise sounding like a ton of dynamite; that he observed the situation and had his wife telephone for the ambulance; and that he went over and helped remove Mrs. Hilton from beneath her car.

Willis R. Pressell testified that at the time of the accident in question he resided at 815 Arlington avenue, being the fourth lot north of Taylor street, the intervening lots being vacant; that at the time of the accident, between 1 and 2 o'clock in the afternoon, he and his wife, who were in the basement, heard a loud crash and a loud squeal; that he went over to where the cars were, and helped extricate the deceased; and that he examined the Hilton car and found it was in second gear. Mildred M. Pressel, wife of Willis R. Pressell, testified to the same state of facts.

Carl C. Barnes testified that he had resided in Reno for about thirty years and had driven automobiles practically every day since 1910; that he had driven numerous makes of cars, and in many races; that on the afternoon of the day of the accident in question he was driving north on Arlington avenue, and that the car of defendant passed him, going north, one block south of the place of the accident, at which time it was traveling

at about sixty or sixty-five miles an hour; that he observed the car driven by deceased, as it approached Arlington avenue, and that it was going about thirteen miles an hour; that the rear of her car was just over the center of the intersection, to the east; that he looked at his speedometer and it showed he was going between twenty-five and thirty miles an hour, nearer thirty than twenty-five. He also testified that it was his best judgment that deceased was making a turn to the north after entering the intersection, and that he saw the deceased making a movement of the arm, such as a person might make after signaling for a turn or reaching for the top of the steering wheel.

Walter Walters testified that he was twenty-six years old; that he had driven ever since he was fourteen years old, and nearly every kind of car; that on the afternoon of the accident he was driving a Ford V-8 along Arlington avenue into Reno, and that the defendant passed him, going at the rate of seventy miles per hour; that he was going thirty-five miles an hour; and that defendant went two blocks while he was going one.

Ernest Pfeiffer testified that he is about fifty-three years old, and had been an invalid for about ten years; that he had driven automobiles from 1908 to about 1931, and had ridden in them since; that on the afternoon of the accident he and Paul Laiolo were sitting on his porch, which faces Arlington avenue, according to his habit on good days ever since he had become afflicted; that he had observed cars go by during those years; and that on the afternoon in question he saw defendant's car pass at a terrific speed, and in about three and a half seconds heard a terrible crash a block away—at the intersection of Taylor street and Arlington avenue, where he saw the wrecked cars.

Paul Laiolo testified that he was eighteen years old and had just completed his sophomore year as a student at the University of Nevada, at the time of testifying; that he visited with Mr. Pfeiffer on his porch probably

two or three times a week; that he observed defendant's car pass on the afternoon of the accident; that while sitting there he heard the car approaching at a high speed (that he was a poor judge of speed, but was of the opinion the car was going at least forty miles an hour when it passed the Pfeiffer home); that as it passed either he or Mr. Pfeiffer remarked: "That fellow is flying." He was asked how long it was from the time the defendant's car passed until he heard the crash, to which he answered: "Well, I would say after my eyes left the automobile I turned back facing north and caught the glimpse of the other automobile that turned over; and in that statement 'That fellow's a flying' was made, that instant, there was a crash. I would say it wouldn't take more than three to four seconds, perhaps less."

The defendant testified that at the time of the accident he was driving on the right-hand side of Arlington avenue; that his usual speed on that street was between thirty and thirty-five miles per hour, and he estimated he was going at that speed at the time of the accident; that the first he saw of the car driven by deceased was at the time the cars crashed; that he glanced down Taylor street, to the west, when he was in about the middle of the block, but saw nothing approaching. He testified that as he was driving along Arlington toward Taylor he observed a lot of children playing ball on his right (east side of Arlington), and that he kept his attention centered on the children because he had a horror of running into a child.

Lee Arthur, a witness called in behalf of the defendant, testified that he was an automotive engineer; that he had had three years at the University of Michigan, but did not take a degree; that he had been with several large organizations, among them General Motors and General Electric, for which he worked, not as an automotive engineer, "but internal combustion." He gave other testimony relative to his qualification to give testimony as to the maximum speed at which defendant's

car was going at the time of the accident, basing his conclusions upon the injuries sustained by the car of deceased. He testified that the car was not going over thirty-five miles per hour, and that twenty-five miles would be near right.

F. H. Sibley, dean of the College of Engineering at the University of Nevada, after testifying to his educational advantages and experience covering many years, in answer to a hypothetical question, based upon the facts and circumstances in this case, as testified to, stated that he could not tell the rate of the speed of defendant's car at the time of the accident. He gave his reasons for his conclusion.

In addition to this summary of the material oral evidence, there was introduced photographs showing certain physical facts, such as the two streets at the intersection, residences in that vicinity, and the general surroundings.

From a consideration of all of the evidence in the case, it is clear that we must affirm the judgment and order appealed from. There can be no doubt but that the trial court was justified in finding that the defendant was guilty of negligence in driving his car into that of the deceased. We think there is ample evidence to sustain the finding of the court that defendant was driving at over sixty miles per hour at the time of the accident. It is not our purpose to weigh the evidence or to comment upon it at length—it does not deserve it.

The witness Walters testified that defendant passed him going at the rate of seventy miles per hour; the witness Pfeiffer testified that defendant passed his house—one block from the place of the accident—going at a terrific speed, and in about three and one-half seconds crashed into the car of deceased. Paul Laiolo, who was on Mr. Pfeiffer's porch when defendant passed, testified that when defendant passed that either Mr. Pfeiffer or he remarked, "That fellow is flying"; and though he stated that he thought defendant was going at about forty miles per hour, he was a poor judge of speed. He

added, however, that it was not more than three or four seconds from the time defendant passed the house before he heard the crash.

Counsel for defendant ridicules the testimony to the effect that it was about three and one-half seconds between the time defendant passed Mr. Pfeiffer's house and the time of the accident. The evidence shows that it is about 400 feet from a point in front of Mr. Pfeiffer's house to the point of contact of the two cars. A car going at the rate of seventy miles per hour will take 3.8961038 seconds to go 400 feet.

The witness Barnes testified that defendant passed him on Arlington avenue, one block from the point of accident, at which time defendant was going about sixty or sixty-five miles per hour; that he looked at his speedometer; and that he was going nearly thirty miles per hour when defendant passed him.

The defendant admitted that at the time of the accident he was traveling at between thirty and thirty-five miles per hour; that he was watching children playing ball on a vacant lot, and did not see the car of deceased until the moment of the accident.

In the light of this testimony, we do not conceive of any theory upon which we can say the trial court was not justified in finding the defendant guilty of negligence.

■ The defendant must establish the plea of contributory negligence by a preponderance of the evidence. To sustain this defense he invokes section 4358 N. C. L. which reads: "Where two vehicles are approaching on any public street or highway so that their paths will intersect and there is danger of a collision, the vehicle approaching the other from the right shall have the right of way," and in the same connection asserts that deceased was guilty of contributory negligence, in that she could see defendant while she was from 40 to 60 feet from the intersection and he about 175 feet therefrom, and negligently entered the intersection, and that she violated the city ordinance which provides that one

shall not enter an intersection at a greater speed than twelve miles per hour, and in the same breath contends that the question at issue was settled by this court in the case of Cox v. Los Angeles & Salt Lake R. R. Co., 56 Nev. 472, 56 P. (2d) 149. Before proceeding further, we may say that the law of that case is not applicable to the situation in hand.

■■ We cannot give section 4358 N. C. L. the rigid construction contended for by defendant. It seems to be the theory of defendant that one approaching an intersection from the left should not enter the intersection if a car is in sight approaching from the right. Such is not the intention of the section. To give it such an interpretation would, in many instances, result in hindering for a long period the progress of one or many on the left. This section must be construed and applied in the light of reason and common sense— with a due regard for autoists approaching from the left as well as for the one approaching from the right, and, above all, with an aim to promote safety, and at the same time facilitate travel. The courts must have in mind that the section applies when two vehicles are approaching an intersection in such a manner "that their paths will intersect," and that there "is danger of a collision." The defendant was not in a favored position unless it was dangerous, in all of the circumstances, for deceased to enter the intersection as she did. In this connection it is insisted that deceased could see the approach of defendant while he was about 175 feet from the intersection and when she was from 40 to 65 feet from it, and that she entered it at an unlawful speed. The fact that the car of deceased was found to be in second gear after the accident, and that she had gotten more than halfway across the intersection when her car was hit, are circumstances strongly tending to support the findings.

The Nevada section quoted is identical to a section of the Iowa highway act, which was construed by the supreme court of Iowa in the case of Sexauer v. Dunlap,

207 Iowa, 1018, 222 N. W. 420, 422, where the court used the following language:

"The statute could only become operative under circumstances where the driver of a car either knew, or by reason of all of the attending circumstances, was chargeable with notice of, the existence of such intersecting highway. The statute in terms provides that it only becomes operative in the event that two vehicles are approaching the intersection in such a manner *that their paths will intersect,* and also in such a manner that there is *danger of collision.* It is only when these two conditions combine that the car approaching from the right has the right of way. * * * The question of whether or not the appellant was acting as an ordinarily careful and prudent man when he failed to discover the intersecting road and failed to yield the right of way to the appellee after he discovered, or should have discovered, the existence of such road and the approach of the appellee's car thereon, were questions for the determination of the jury; but it cannot be said, as a matter of law, that the appellant, under the facts disclosed in this record, was guilty of contributory negligence in driving into said intersection without yielding the right of way in the same to the appellee. As bearing on this question, see Carlson v. Meusberger, 200 Iowa, 65, 204 N. W. 432. See, also, Judd v. Rudolph [207 Iowa, 113], 222 N. W. 416 [62 A. L. R. 1174], filed at current term. * * *

"In the instant case in view of all the facts and circumstances surrounding the situation, we think it was a question for the jury to determine whether or not the appellant was guilty of a violation of the statute, and hence guilty of negligence in failing to sound his horn before approaching the highway upon which the appellee was driving. In other words, while the question is a very close one, we do not think, under the record in this case, that the court could hold, as a matter of law, that the appellant was guilty of negligence in failing to

sound his horn in approaching the intersecting highway.

"In any event, upon this branch of the case, even though the appellant was guilty of negligence in failing to sound his horn in approaching the intersecting highway, it was still a question for the jury to determine whether or not such negligence, if it existed, contributed to the resulting injury. It is the usual and general rule that the question of contributory negligence is a question for the jury, and such rule is applicable to the facts of the instant case upon this question."

The supreme judicial court of Maine, in Fitts v. Marquis, 127 Me. 75, 140 A. 909, had under consideration a section very similar to our own, except that it omits the phrases "that their paths will intersect" and "danger of a collision." In applying the Maine statute to the facts of that case, the court said: "This right of way is not absolute. The statute is a road regulation and not an inflexible standard by which to decide questions which arise over collisions at intersections of roads. The law does not confer the right of way without reference to the distance of the vehicles from the intersecting point, their speed, and respective duties. Precedence is not given under all circumstances to a vehicle on the right against a vehicle from the left. No driver, and especially no driver of an automobile, has leave to approach an intersection without using reasonable watchfulness and caution to have his vehicle under control. When approaching a highway crossing, as elsewhere on the public ways, eternal vigilance is essential to the practical matter of driving automobiles. If a situation indicate collision, the driver, who can do so by the exercise of ordinary care, should avoid doing injury, though this involve that he waive his right of way. The supreme rule of the road is the rule of mutual forbearance. Mark v. Fritsch, 195 N. Y. 282, 283, 284, 88 N. E. 380, 22 L. R. A. (N. S.) 632, 133 Am. St. Rep. 800."

In Shuman v. Hall, 246 N. Y. 51, 158 N. E. 16, 17, in

applying the facts of that case to a statute similar to ours, eliminating the provisions as in the Maine case, after citing certain cases the court said:

"As we stated in these cases, it is apparent that the application of this statute must depend upon all the surrounding circumstances, the distance of the cars from the intersecting point, the speed, and the relative duties placed upon each. The law does not attempt to say at· what particular point the vehicle having the subordinate right must stop or give way. The main purpose of this provision is to demand care of the driver commensurate with the danger, and to require of the driver approaching a street with a vehicle coming from his right to slow up and let that vehicle pass when their positions are such that a reasonably careful man might otherwise be in doubt as to which should go first. If the two vehicles are so near the intersecting point that there is a chance of collision if both keep on at the same speed, then the statute says the vehicle approaching from the right may take precedence. This is no finespun distinction. Driving motor cars is a practical matter, and the statute requires and demands care of both drivers. The highway laws are full of these injunctions, and they are to be obeyed. Circumstances and conditions vary, and we must apply these injunctions and directions to give effect to them if possible. The vehicle having the subordinate right must not take chances, make close calculations, try to slip by on a chance; it must give way to the vehicle on the right when it is anywhere near the crossing. Only in this way can these serious accidents be avoided.

"On the other hand, the statute cannot be pressed too far. The intersections of all streets and highways are so numerous that one driver must rely upon the prudence and carefulness of another. No one driver is to obey the rules; all must obey them. The driver coming from the right is equally obliged to exercise care."

Other cases in point are: Harris v. Johnson, 174

Cal. 55, 161 P. 1155, L. R. A. 1917c, 477, Ann. Cas. 1918e, 560; Smith v. Lenzi, 74 Utah, 362, 279 P. 893; Robinson v. Clemons, 46 Cal. App. 661, 190 P. 203; Huber v. Scott, 122 Cal. App. 334, 10 P. (2d) 150; Pattison v. Cavanagh (Cal. App.), 63 P. (2d) 868.

The foregoing decisions so well state our conception of the law as it should be that we content ourselves with saying that whether or not, under the circumstances, the deceased was guilty of contributory negligence, was a question to be determined by the trial court, and that we are not at liberty to say that it clearly appears that the findings and judgment are erroneous, hence they must be sustained. Consolazio v. Summerfield, 54 Nev. 176, 10 P. (2d) 629.

Counsel for respondent contends that we cannot consider defendant's contention that the judgment was excessive, for the reason that such contention was not assigned as a ground for a new trial.

Section 2, Stats. 1935, p. 195, c. 90, reads:

"The former verdict or other decision may be vacated, and a new trial granted on the application of the party aggrieved for any of the following causes materially affecting the substantial rights of such party: * * *

"5. Excessive damages appearing to have been given under the influence of passion or prejudice.

"6. Insufficiency of the evidence to justify a verdict or other decision, or that it is against law.

"7. Error in law occurring at the trial and excepted to by the party making the application."

It does not appear that defendant in his motion for a new trial relied upon the ground that the damages awarded were excessive, or otherwise raised the point in the trial court. It is a rule established by a long line of authorities that a point, not jurisdictional, cannot be raised for the first time in this court. Paterson v. Condos, 55 Nev. 260, 30 P. (2d) 283.

But counsel for defendant asserts that the last sentence of section 9, chap. 90, Stats. 1935, negatives

the idea that one must raise the question involved by a motion for a new trial before taking an appeal. We cannot agree with the contention. That section provides that where the appeal is upon the ground that the evidence is insufficient to justify the verdict or decision, a notice of intention to move for a new trial must have been filed and served by the unsuccessful party upon the prevailing party, before the time for an appeal from the judgment has expired. The last sentence of the section does not apply to this case. The court rendered an oral decision upon the conclusion of the argument, ordering a judgment in favor of the plaintiff in the amount complained of.. A decision is the announcement by the court of its judgment. Central Trust Co. v. Holmes, 30 Nev. 437, 97 P. 390; Coleman v. Moore & McIntosh, 49 Nev. 139, 241 P. 217; First. Nat'l Bank v. Fallon, 55 Nev. 102, 26 P. (2d) 232.

The appeal as to this point is upon the ground that the evidence is insufficient to justify the decision—that is, that the evidence did not warrant the court in giving judgment in the amount awarded. In support of this contention counsel devotes seven pages of his brief to presenting and discussing the evidence on this point.

We think that under the express terms of the section relied upon it was obligatory upon defendant to embody in his notice of intention the ground of excessive damages, if he desired to raise that point, and not having done so, we cannot consider the evidence to determine that point. Burbank v. Rivers, 20 Nev. 81, 16 P. 430; State v. Sadler, 21 Nev. 13, 23 P. 799; Finnegan v. Ulmer, 31 Nev. 523, 104 P. 17; Gill v. Goldfield Con. M. Co., 43 Nev. 1, 176 P. 784, 184 P. 309; Giannotti v. De Bock, 47 Nev. 332, 221 P. 520; Leech v. Armstrong, 52 Nev. 125, 283 P. 396, 287 P. 174.

For the reasons given, the judgment must be affirmed.

█ Counsel for plaintiff, at the time of the argument, moved that damages be assessed to defendant for prosecuting this appeal for delay merely, pursuant to section 28, chap. 90, Stats. 1935. We cannot say that

the facts in the case justify us in saying that the appeal was not taken in good faith; hence the motion is denied.

It is ordered that the judgment and order appealed from be affirmed.

### ON PETITION FOR REHEARING
April 8, 1937.

*Per Curiam:*

Rehearing denied.