# WITTENBERG *v.* WITTENBERG

No. 3093

March 5, 1936. 55 P. (2d) 619.

*Walter Rowson,* for Appellant:

*Lowell Daniels* and *H. R. Cooke,* for Respondent:

## OPINION

By the Court, TABER, J.:

Appellant, defendant in the court below, has appealed from a judgment of the Fifth judicial district court, Nye County, granting her husband a decree of divorce upon the ground of willful desertion for a period of more than one year, and from an order denying a new trial.

The parties intermarried at Tonopah on or about the 3d day of May, 1929, and lived together there for about one year. On May 13, 1930, defendant went to her separately owned ranch at Hot Creek, and continued to live there until that property was sold under foreclosure in the spring of 1932. Plaintiff claims that defendant's going to her ranch and remaining there were contrary to his wishes, and that he tried on a number of occasions to persuade her to return to the home in Tonopah. Defendant, on the other hand, says that her going to the ranch was with the full approval of plaintiff, that he at no time requested her to return to Tonopah, and that he at no time made it possible for her to return there.

Each of the parties had been married before, and at the time of the marriage in May, 1929, each had children the issue of their previous respective marriages.

There are no children the issue of their marriage to each other.

Domestic differences and misunderstandings became more serious as time went on, and in December, 1932, plaintiff sued for divorce upon the ground of desertion. When it became apparent that defendant intended to contest the action, plaintiff amended his complaint to include extreme cruelty as a further ground for divorce. Defendant, in her answer, denied the allegations of desertion and extreme cruelty, and by way of "counter-claim, cross-complaint and ground for affirmative relief" charged desertion, neglect to provide, and extreme cruelty. Her answer and cross - complaint prayed that plaintiff take nothing by his complaint, that she be awarded separate maintenance in the sum of $150 per month, and that she be awarded her costs, including counsel fees.

The case was tried in February, 1934, before the court without a jury, Honorable L. O. Hawkins, judge of the Sixth judicial district, presiding. Thereafter the court rendered its decision, granting plaintiff a decree of divorce upon the ground of defendant's willful desertion of plaintiff for more than one year next immediately preceding the commencement of the suit. In said decision the court held that neither party had proved a case of extreme cruelty against the other, and further held that defendant had failed to prove a case either of desertion or failure to provide.

Defendant's assignments of error are based chiefly upon her contentions (a) that the evidence was insufficient to justify the court's finding that defendant willfully deserted plaintiff; (b) that it was error for the court to hold that defendant failed to prove a case against plaintiff for desertion; and (c) that the court erred in deciding that defendant did not make out a case against plaintiff for failure to provide the common necessaries of life.

The point most urgently stressed by defendant on this appeal is that plaintiff utterly failed to prove that her alleged desertion was against his will and without his consent. As stated in appellant's reply

brief, "Respondent's failure to produce any evidence whatever that the alleged desertion by appellant was against his will and without his consent is the very gist, root and substance of our appeal."

Besides listening attentively to the oral arguments, and thoroughly studying the briefs, we have carefully read and considered the entire record on appeal, consisting of nearly 800 pages. On almost every important issue of fact the testimony given by either party is flatly denied by the other. Plaintiff testified that he was opposed to his wife's staying at the ranch at all, and that after she went there on May 13, 1930, he visited her on several occasions, each time asking her to return to Tonopah. Defendant, on the other hand, testified that the matter of her going out to stay on the ranch was discussed for several months prior to May, 1930, and it was finally agreed that she should go out there, that plaintiff would spend the week - ends with her at the ranch, that she would go into Tonopah whenever possible, and that whenever he was going on a long trip he would come by the ranch and take her with him. She denies that plaintiff at any time requested her to go back to Tonopah. She points out, as corroborative of her testimony, that in none of the letters written her by plaintiff is there any request or suggestion that she return to Tonopah. On the other hand, while defendant says she was willing at all times, from the date she claims plaintiff deserted her until she filed her answer and cross - complaint in March, 1933, to return to Tonopah and live there with plaintiff, there appears to be no evidence that during that period of time she in anyway informed him that she was willing to return. Defendant testified that Mrs. Burdick grievously interfered in her personal, domestic, social, and business affairs—a charge which is denied in toto by both plaintiff and Mrs. Burdick. According to plaintiff, marital relations ceased on June 8, 1930, but defendant testified positively that such relations continued on occasions until and including January 12, 1932. Defendant testified that plaintiff continually complained about

her having used the greater part of the proceeds of her first husband's life insurance policies in paying pre-existing indebtedness, a charge which plaintiff wholly denies. Plaintiff testified that defendant, first on the honeymoon and frequently thereafter, became angrily demonstrative because he would not substitute her as beneficiary in a policy which had been taken out by him previous to the marriage for the purpose of providing for his first wife; also, that defendant berated him because he would not take out a $50,000 life insurance policy, making her the beneficiary, notwithstanding she knew that he could not afford to pay premiums on such a policy. The aforesaid charges are denied in their entirety by defendant. Plaintiff testified, but defendant denied, that she complained of his children being in their home. Plaintiff testified that defendant made life miserable for him by her continual and insistent demands that he do something to prevent her losing the heavily mortgaged ranch; defendant admits that this business was occasionally the subject of conversation, but denies that she ever said or did anything disagreeable or unreasonable in connection with it. According to defendant's testimony, plaintiff admitted to her that he was "crazy" about nineteen or twenty other women, and further that he was "crazy about all women." Defendant charged that plaintiff was in love with one other woman in particular. Plaintiff categorically denied said alleged admissions, and testified on cross-examination that during the year preceding the trial he had not been keeping company with any woman in particular, that he had taken any amount of women in his car, that he might have paid more attention to one woman in particular than to other ladies, that he had been on some trips with this one particular lady, he could not say how many, but that he had not been on any trips with her alone. Defendant testified that on one occasion she informed plaintiff she could not compete with nineteen or twenty other women, and she further testified at the trial that she would still be willing to receive plaintiff back if he could free himself

from entanglement with other women. Defendant testified that in the late afternoon or early evening of January 12, 1932, after certain conferences at the Mizpah Hotel when she, plaintiff, and a Mr. Cole were present, plaintiff went to the train to see Mr. Cole off, and then returned to the hotel, went to defendant's room, and while there had conjugal relations with her; as to this, plaintiff not only denies such relations, but testifies positively that he was not alone with defendant in her room at any time on the afternoon or evening of said day. It is admitted that the water and lights were turned off at the Tonopah home about the end of May, 1930; but while defendant testified that she was at no time informed that they were or were going to be turned off, plaintiff testified that, when he was at the ranch trying to persuade defendant to return to the home at Tonopah, he informed her that if she were going to remain at the ranch he was not going to continue living at the house, and would have the lights and water turned off, but would have them turned on again whenever she should come to town. Defendant testified that on one occasion, after she had lent her own automobile to plaintiff's mother, he asked defendant to execute a bill of sale of the car to his mother, and upon her refusal commenced choking her and finally began packing his clothes, at the same time informing her that he was going to leave and go to his sister's home. Defendant, as she states, then consented to execute the bill of sale, whereupon plaintiff admitted that he had made a "glorious fool" of himself, and went on to say that Mrs. Burdick was waiting at the office to mail the bill of sale to his mother, and that he would rather die than go back and tell his sister that he had failed in his effort to secure the bill of sale. Plaintiff denied that there was any trouble whatever in connection with said bill of sale, and stated that it was only asked for so his mother could get a license in California, where the car then was, and that the car was later restored to defendant in good condition. Plaintiff testified that on June 3,

1930, at the Mizpah Hotel in Tonopah, defendant told him she was going to Los Angeles, and at the same time said, "I am through with you." Defendant denied that she ever made any such statement.

Defendant did not live with plaintiff at any time after she left Tonopah on May 13, 1930. She testified that on one occasion she agreed plaintiff could have an uncontested divorce if arrangements could be made regarding the mortgage so she would not lose her ranch. She further testified that on another occasion she wrote plaintiff informing him that if he would come out to the ranch and tell her that he did not love her she would let him get a divorce, but that when he did come soon afterwards, he declared his love for her and said he did not want a divorce.

It is perfectly plain that some false testimony was knowingly given by one or both parties. We have striven earnestly to satisfy ourselves as to the real truth, especially on the more important issues. In so doing we have not overlooked the testimony of defendant's son and daughter, which is calculated to throw considerable doubt upon plaintiff's testimony that there were no marital relations after June 8, 1930. Nor have we lost sight of the facts that none of plaintiff's letters to defendant requested her to return to Tonopah, that plaintiff himself does not claim to have asked her at any time after June, 1930, to return there, that defendant left most of her good clothes at the residence in Tonopah when she went to the ranch, and some other facts and circumstances tending to corroborate her testimony. On the other hand, we have not felt we could overlook the admitted fact that defendant left the home at Tonopah on May 13, 1930, and has never lived with plaintiff since. Nor did she at any time inform plaintiff that she was willing to return. Defendant strenuously contends that there was no evidence whatever that her alleged desertion was against the will or without the consent of plaintiff. In this she is clearly mistaken, as plaintiff's positive testimony that he never wanted her

to stay at the ranch, and that after she went there on May 13, 1930, he made several trips and tried to persuade her to return, is certainly some evidence that her departing from the Tonopah home and remaining at the ranch were against his will and without his consent. The testimony of Mrs. Wilson tends to corroborate plaintiff's testimony that defendant was displeased because of the presence of his children in the home. The testimony of Dr. and Mrs. Burdick tends to corroborate plaintiff in his statement that he was not alone with defendant in her room at the Mizpah Hotel at any time in the afternoon or evening of January 12, 1932.

With regard to turning off the lights and water in the Tonopah residence, we think it would have shown good judgment if defendant, when she found them turned off, had, instead of registering at a hotel, asked plaintiff to have them turned on.

Defendant did not charge plaintiff with adultery in her cross-complaint, nor did she, in her bill of particulars, mention any sorrow or humiliation caused by his alleged association with other women. It would seem, therefore, that she brought these matters up at the trial for the purpose of showing that plaintiff's alleged conduct in associating with other women justified her in remaining away from the home in Tonopah, and made it impossible for her to return there — plaintiff thus being in law the real deserter. If it was true that plaintiff was "crazy" over at least nineteen or twenty other women, and if he was in love with one other woman in particular, it would appear that at least some corroborative evidence along those lines from third parties could have been presented to the court.

The only corroborating witnesses who could be regarded as being wholly impartial were Mrs. Lyons, Dr. Donald, and Mrs. Rodgers. The testimony of none of these was such as to be decisive of any important issue in the case. Mrs. Wilson and her husband worked for plaintiff some ten years. The other witnesses were related by blood or marriage to one or the other of the parties.

We are not to be understood as saying that any of the parties referred to in this paragraph were unworthy of belief because of business association or by reason of consanguinity or affinity to either of the parties. But trial courts have the right to take such matters into consideration in passing upon the credibility of witnesses and the weight to be given their testimony.

██ In cases such as this, on issues of fact, much must be left to the wisdom and experience of the presiding judge, who sees and hears the parties and their witnesses, scrutinizes their testimony and studies their demeanor. In rendering its decision in this case, the trial court said it was positive in its opinion that defendant deserted the plaintiff, and also decided that defendant had not proved a case against plaintiff, either for desertion or for failure to provide the common necessaries of life. If this court, after careful study and consideration, were clearly of opinion that the findings of the trial court were not warranted by the evidence, we would have the power, and it would be our duty, to reverse the case even if the record contained substantial evidence supporting those findings. But we find ourselves unable to say that we are clearly satisfied the evidence does not justify the findings.

██ Appellant contends that even if she willfully deserted plaintiff, which she denies, the desertion was condoned. This contention is based chiefly upon the alleged exercise by plaintiff of his marital privileges on a number of occasions after the date of the commencement of her alleged desertion, and extending over a period of time to and including the 12th day of January, 1932. Condonation is an affirmative defense, and as a general rule should be specially pleaded. Morris v. Morris, 50 Nev. 298, 258 P. 232; Keezer on Marriage and Divorce, sec. 500; 9 R. C. L. 386, sec. 179; 19 C. J. 115, sec. 295; C. J. Perm. Ann., 1927–1931, p. 1276, citing Morris v. Morris, supra. Condonation was not specially pleaded in the instant case. Not only that, but we have been unable to find any mention of condonation as a defense anywhere in the voluminous record

on appeal. Nothing was said concerning it at any time during the entire trial, although evidence was offered and received which, in this court, appellant now contends established condonation. The case was submitted for decision in the lower court without argument, oral or written, so the question of condonation necessarily could not have been urged upon that court before it rendered its decision. There is nothing to show whether condonation was or was not argued to the district court on the hearing of the motion for new trial. If that question was argued at that time, it must necessarily have been determined adversely to defendant's contention, as the motion for new trial was denied. If the question of condonation was argued on the hearing of the motion for new trial, we have no way of knowing whether the court, in deciding adversely to defendant on that question, based its decision on the law, or on the evidence, or on both law and evidence. In the written decision of the lower court denying the motion for new trial, no reference whatever is made to the question of condonation. No reference is made to the matter of condonation in any of appellant's assignments of error. It thus appears that appellant's contention that her alleged desertion of plaintiff was condoned was not made in the trial court, and therefore cannot be urged in this court for the first time. Paterson v. Condos, 55 Nev. 260, 30 P. (2d) 283.

▇▇▇ Appellant contends that there was no corroboration of plaintiff's testimony that she willfully deserted him. By statute in a number of states corroboration is expressly required. In this state the only statute requiring corroboration in divorce actions is section 9467.02 N. C. L., which provides that "In all civil cases where the jurisdiction of the court depends upon the residence of one of the parties to the action, the court shall require corroboration of the evidence of such residence." It has been the practice in this state not to require corroboration of plaintiff's testimony relating to the ground or grounds for divorce, where his or her testimony convinces the court or jury of its

truthfulness. This rule, generally recognized for so many years by the district courts, we are not disposed to disapprove. The purpose of statutes requiring corroboration of plaintiff's testimony relating to the ground or grounds for divorce, is to prevent collusion. There is certainly no collusion in this case. It may also be observed that plaintiff's testimony that defendant willfully deserted him is to some extent corroborated, not only by the fact that she left the home in Tonopah and never lived with him again, but by the further circumstance that she at no time informed him of her willingness to return. Keezer lays down the rule that "As a general rule a spouse at fault in the original separation who desires to resume marital relations to prevent the desertion from becoming a statutory ground for divorce, must make a good faith unconditional offer to return and resume the marital status." So in 9 Cal. Jur. 678, 679, the author says: "Where the wife has abandoned the husband without justification, it is her duty to return and conform to his reasonable place and mode of living as the head of the family. It is not the duty of the husband so abandoned by the wife to solicit her return, and until her offer to return, no obligation of support rests upon him."

Assignment of error VIII is that "The court erred in overruling defendant's objections to questions propounded by plaintiff, and in denying defendant's motions to strike testimony adduced by plaintiff." Assignment IX reads: "The court erred in sustaining plaintiff's objections to questions propounded by defendant, and in granting plaintiff's motions to strike testimony adduced by defendant." Later in appellant's opening brief the pages and lines of the record on appeal are listed, showing the rulings claimed to be error. None of these rulings were discussed on the oral argument in this court, and the only argument in appellant's briefs is the following: "In the trial of divorce actions, the court is not governed by strict rules of evidence, but exercises a broad discretion. (19 C. J. 146.)" Assuming, without deciding, that appellant is

correct in her contention that these alleged errors have been assigned properly and with sufficient specificity, counsel has not, either in oral argument or briefs, stated reasons showing why any of the rulings complained of constituted error. Appellant has quoted a general rule or proposition of law from Corpus Juris, without showing its applicability to any of the trial court's allegedly erroneous rulings. While there is no inflexible rule which prevents this court from considering questions not discussed in the briefs or oral argument (Radovich v. Western Union Tel. Co., 36 Nev. 341, 135 P. 920, 136 P. 704), we will not ordinarily concern ourselves with such alleged errors. Robison v. Mathis, 49 Nev. 35, 234 P. 690; 3 C. J. 1428, 1429, 1431; 4 C. J. 1070–1072. We have read all the portions of the record specified in appellant's brief, relating to said assignments of error VIII and IX. If from this mere reading of the questions, answers, objections, motions, and rulings we were clearly convinced that any of the rulings was patently erroneous and prejudicial, we would consider it proper, and our duty to take the same action as we would had the particular ruling been argued and discussed in the briefs or oral arguments, or both; but as we are not so convinced, from said reading, that any prejudicial ruling was made, we see no reason, in the instant case, for departing from the general rule and undertaking an independent investigation, on our own motion, for the purpose of ascertaining whether the trial court's said rulings on evidence were correct, and if not, whether any erroneous ruling was prejudicial.

■ Appellant assigns as error that the trial court unduly hastened the proceedings at the trial, thus denying her an opportunity to adequately present her case without the intervention of extraneous matters tending to embarrass the orderly presentation of her case. The record shows that on the last day of the trial the court twice informed respective counsel that the taking of testimony would have to be closed by 10 o'clock that evening. When defendant finished the examination of her

last witness, counsel for plaintiff stated, "This six minutes I have to select between a cross-examination and a rebuttal." Thereupon counsel for defendant said, "I have used up more time on the rebuttal than I intended, but I have made every effort to hurry." He then suggested to the court that the time be extended beyond 10 o'clock so that counsel for plaintiff could finish his examination. Defendant made no objection, nor did she take any exception, to the action of the court now assigned as error. She made no request for further time. She did not offer to present any further evidence, nor was the court informed that she had any further testimony or evidence which she desired to offer. We therefore hold, on this assignment, that there was no prejudicial error.

 Prior to the oral argument on this appeal, appellant noticed a motion for an order permitting the court to file and include as part of the record on appeal certified copies of the depositions of Frank Wittenberg and Thomas F. Cole taken in behalf of plaintiff and admitted in evidence at the trial. This motion was made "conformable to Rule VII" of this court, and was argued and submitted for decision at the time this appeal was orally argued and submitted. There formerly was in force in this state section 414 of the civil practice act, the same being section 5356 of the Rev. Laws, under which certain documents might be certified up by the clerk of the lower court. We held in Water Co. of Tonopah v. Belmont Development Co., 50 Nev. 24, 249 P. 565, that that provision had been repealed. Notwithstanding our holding in that and subsequent cases, the provision alluded to was carried into the Nevada Compiled Laws of 1929 as section 8903. Under the present holdings of the court, nothing can be considered, where a judgment on the merits is being reviewed, except what is in the judgment roll proper and the bill of exceptions as settled by the trial court. Such was the holding in Brearley v. Arobio, 54 Nev. 382, 383, 12 P.(2d) 339, 19 P.(2d) 432. Had counsel for appellant made a motion, supported by a proper showing,

for the remanding of the bill of exceptions for amendment thereof so as to embrace these depositions, it may be that we would have entered an order in compliance with the request, as we did in Brockman v. Ullom, 52 Nev. 267, 286 P. 417, and in Taylor v. Taylor, 56 Nev. 100, 45 P.(2d) 603. Not having done so, her motion must be denied.

Appellant has also assigned as error that the court erred in admitting, over her objection, certain evidence by deposition. The record shows that every objection made by defendant to specific questions or answers was sustained by the court. As to the objection made to all of the questions propounded in the deposition, we are not in a position to say whether error was committed, for the reason that the deposition itself is not in the record.

The judgment and order appealed from are affirmed.