THOMAS ORMACHEA, APPELLANT *v.* MARGUERITE LUCILLE ORMACHEA, RESPONDENT.

No. 3575

April 17, 1950. 217 P.2d 355.

274

*Kearney & Adams,* of Reno, and *A. L. Haight,* of Fallon, for Appellant.

*Griswold & Vargas,* of Reno, and *James W. Johnson, Jr.,* of Fallon, for Respondent.

## OPINION

By the Court, WINES, District Judge.

This is an appeal from a judgment rendered by the district court of the First judicial district, and from an order denying a new trial.

The action in the district court was one for divorce. The appellant's first assignment of error is that the evidence fails to establish the marriage.

These parties first met in the summer of 1930. Soon after this meeting the parties had illicit relations. The respondent became pregnant, and some time during the month of October, 1930, began living openly with the appellant. The parties continued to live together and to maintain a common home from then until July, 1947, when the respondent left their home and began living separate and apart from the appellant. During this time seven children were born to the parties, the last being born in 1943.

The children, as they reached school age, were registered at school as the children of Thomas Ormachea and Marguerite Lucille Ormachea, and with the exception of the last born of these children, the respondent at all times recognized and treated the children as his own and provided them with necessaries.

During this period the parties here signed legal documents as man and wife, and they were accustomed to making income tax returns as man and wife. The appellant maintained accounts at several stores in Fallon, Nevada, where they resided, and the respondent purchased food and clothing for herself and the children

from the various establishments at which the appellant maintained accounts.

Several persons of some prominence who resided in Fallon, Nevada, testified that the parties were reputed to be man and wife in that community. In addition to proving open and continuous cohabitation as man and wife in this community for all these years, the respondent testified that she and the appellant lived together as man and wife, and that this was with the consent of respondent and of the appellant.

Except as to the last statement of the foregoing paragraph, the appellant does not dispute the evidence, but insists nevertheless that the evidence falls short of showing a marriage, because on many occasions the respondent requested the appellant to formalize their relations by a marriage ceremony, and on at least one occasion told the appellant that he had no voice in a matter involving one of the children since she was not married to him. This, it is argued, plainly shows that the respondent at no time considered her relations with the appellant as other than illicit; that while respondent held this view of their relations she could not have contracted a common-law marriage with the appellant, as that would have required her consent to and acknowledgment of their marital status.

■ We have no quarrel with the appellant's view of the law that if for all of the years appellant and respondent lived together the respondent held the belief that her relations with the appellant were illicit, she could not have given the necessary consent to live together as man and wife which is required in all cases of common-law marriage. On the other hand, the appellant's proposition is not aided by the presumption that relations shown to have begun illicitly will be presumed to remain so in the absence of clear and compelling proof. That such a presumption has been indulged in other jurisdictions is not disputed, but it has long been the rule in this state that when the relations of the parties in the

beginning are illicit, there is no presumption that the same continues to be so, but the burden of proof is upon the party asserting a valid marriage to prove the same. If there is any presumption, it is in favor of a valid marriage, and this presumption may be based on continuous cohabitation. Parker v. De Bernardi, 40 Nev. 361, 164 P. 645.

■ Then too, the appellant's argument would carry more weight if his testimony indicating the respondent considered their relations as illicit had not been contradicted by the respondent's testimony. It is not our province to determine the credibility of witnesses. It is the exclusive province of the trial court, sitting without a jury, to determine the facts on conflicting evidence and its finding will not be disturbed unless it is clear that a wrong conclusion was reached. Murray v. Osborne, 33 Nev. 267, 111 P. 31; Botsford v. Van Riper et al., 33 Nev. 156, 110 P. 705; McNee v. McNee, 49 Nev. 90, 237 P. 534; Orr Ditch & Water Co. v. Silver State Lodge, 58 Nev. 292, 78 P.2d 95.

■ We do not find anywhere in the record any contradiction of appellant's testimony that respondent on several occasions expressed a desire that the parties enter into a ceremonial marriage. That does not prove, however, that respondent considered their relations as immoral. Nor does it follow that because she expressed such a desire that she did not enter into a common-law marriage. 55 C.J.S., Marriage, sec. 45, page 914.

■ The presumption is in favor of a valid marriage, and arises when continuous cohabitation is shown. Parker v. De Bernardi, supra. In the instant case not only do we have evidence of many years of cohabitation, but in addition proof that appellant and respondent were reputed to be man and wife in the community where they resided, and had been so considered for many years prior to their separation. It would require the most convincing and cogent proof to overcome such evidence and the presumption it raises. We are satis-

fied that the trial court reached the proper conclusion.

■ The appellant next argues that if a common-law marriage did in fact exist between the parties, the trial court erred in awarding a decree of divorce to the respondent upon her showing of extreme cruelty.

"In considering extreme cruelty as a ground of divorce courts have cautiously given it negative, rather than affirmative definitions. The difficulty in giving an affirmative definition arises from the fact that cruelty is a relative term; its existence frequently depends upon the character and refinement of the parties, and the conclusion to be reached in each case must depend upon its own particular facts. 'We do not divorce savages and barbarians because they are such to each other,' said the Supreme Court of Pennsylvania in Richards v. Richards. 'We can exercise no sound judgment in such cases (divorce cases) without studying the acts complained of in connection with the character of the parties, and for this we want the common sense of the jury rather than fixed legal rules.' 37 Pa. [225], 228." Kelly v. Kelly, 18 Nev. 49, 55, 1 P. 194, 195, 51 Am.Rep. 732.

■■ That case is also authority for two rules relative to that ground for divorce; namely, there may be cruelty without personal violence and such cruelty working on the mind may affect the health, but that in any event the conduct complained of must result in danger to life, limb or health or in the reasonable apprehension of such danger. This court has not since that case departed from or enlarged upon those rules. Kapp v. District Court, 31 Nev. 444, 103 P. 235; Nielsen v. Nielsen, 55 Nev. 425, 38 P.2d 663; Miller v. Miller, 54 Nev. 44, 3 P.2d 1069, rehearing granted, 54 Nev. 44, 6 P.2d 1117, affirmed 54 Nev. 44, 465, 11 P.2d 1088. In some jurisdictions the latter rule has been enlarged to include conduct which destroys the legitimate objects and ends of the marriage. Hassell v. Hassell, 185 Okl. 154, 90 P.2d 885; Smith v. Smith, 61 Ariz. 373, 149 P.2d 683; Stegmeir v. Stegmeir, 158 Kan. 511, 148 P.2d 755; Holloman

v. Holloman, 49 N.M. 288, 162 P.2d 782. This court has already stated, however, that the broadening of the present rule must await legislative action. Nielsen v. Nielsen, supra.

We do not wish to be understood as saying that the respondent's case fails because of this. The evidence shows that for many years prior to the separation of the parties the appellant manifested an indifferent attitude toward respondent. This despite the respondent's unstinted efforts in forwarding their business affairs; and in fact the respondent performed tasks on the ranch usually assigned to men hired to do ranch work. This the respondent did for many years, and during that time bore seven children. During the one or two occasions she was ill, and during respondent's pregnancies, her condition served only to arouse appellant's impatience.

The respondent testified that the appellant was domineering and critical toward her. When in the later years the parties prospered, the respondent was not rewarded by light work and increased comforts, but, by appellant's indifference and hardness toward her. This aspect of the case was aptly summed up by the trial court in the remark that in many years' experience as a trial judge he had not become acquainted with a case where a person had given so much and received so little.

For some years prior to the separation the respondent had resented what she felt were improper attentions by appellant to another woman. We think the events related by her justified such feeling, but efforts to obtain from the appellant some explanation met not only with failure, but resulted in arousing his anger and the remark on one occasion, "that if she didn't like it, she could get off the ranch."

The events related by the respondent, and which led eventually to the separation, discussed as isolated occurrences do not impress forcibly. When considered, however, as manifestations of an indifferent, harsh and sometimes hostile attitude toward the respondent and her well being, these events make considerable imprint.

We think the appellant's attitude toward respondent is displayed by his behavior on the occasion of the birth of their seventh child. After raising the question of the paternity of this child, he let the matter drop and continued to live with the respondent.

In July of 1947 respondent left their common home and moved to another residence. At the time she left she stated to the appellant that she was "all in," that she had been "irrigating, and helping with the haying, and trying to keep a garden and keep house, and all that work," and she was, "just about ready to break down."

This is the only testimony bearing directly upon the effect appellant's treatment had upon the respondent. The appellant insists that it is not enough and does not establish danger to health, life, limb or the reasonable apprehension thereof. We think it does. We cannot always expect that a party in a divorce action will express himself explicitly. In such a matter as this we must to a great extent rely on the trial judge's impressions. He sees and hears the witnesses, and acquaints himself with the way in which a witness expresses himself. He is in a better position to observe the conduct and demeanor of the witness and whether the witness tends to overstate or understate his testimony. Wittenberg v. Wittenberg, 56 Nev. 442, 55 P.2d 619. In this case the trial court had substantial evidence to make a finding, and we are not inclined to disturb it. Porter v. Tempa Mining & Mill Co., 59 Nev. 332, 93 P.2d 741; In re Manse Spring, 60 Nev. 280, 108 P.2d 311. As an appellate court we cannot substitute our judgment for that of the trial judge in such matters, and will reverse only when there is no substantial evidence to support the finding of the trial court.

It appears from the foregoing that there were seven children born, the issue of the marriage. The care, custody and control of four of the seven children was awarded to the respondent. All of the children given into respondent's care were daughters of the appellant

and respondent, and were younger than the other three. None of the children whose custody was awarded to the respondent had yet reached the age when she would be allowed to choose with whom she would reside. All of the three older children were over the age of fourteen years, and each was permitted to select the parent with whom he would live. Each party was given the right to visit the children living in the home of the other party.

The appellant cites this as error, and argues that the interests of the children would be better served by awarding to appellant the care, custody and control of all the children, except the last born. The appellant makes no such appeal as to the last born of their children, since he denies that he is her father. But as to the others it is said that because respondent conducted herself improperly on several occasions, she is not a fit and proper person to have the custody of the children.

■ To begin with, the appellant's position as to the last-born child finds no support in law. We desire to make that clear at once. The parties were man and wife, and when this child was born in 1943, they had been living together as man and wife some thirteen years, and they thereafter cohabitated as man and wife until the year 1947. A child born under such circumstances is conclusively presumed to be legitimate. See sec. 9047.06, N.C.L.1931–1941 Supp.

■ Nor are we convinced that the trial court abused its discretion in making such an award. A perusal of the record fails to disclose any instance of neglect or abuse of the children by respondent. Respondent has apparently always been properly solicitous of the welfare of her children and seemed, in fact, more interested in providing them with such advantages as could be afforded, than the appellant. The record shows that during the time the appellant was submitting evidence of the wrong doing of respondent, the trial court also questioned the witnesses. Thereafter the respondent categorically denied such acts and apparently the court was satisfied after hearing all the evidence that the respondent was not disqualified to act as custodian. Under the

rule announced above, we cannot say the court abused its discretion or misconstrued the facts.

We do not think that in view of what has been said above concerning the last born child that there has been any error in the allowance made for her support and maintenance. The parties to this action remain responsible for her support and maintenance.

The appellant has taken exception to the court's order directing him to pay the sum of thirty-five dollars each month for the support and maintenance of each child living with the respondent, and to the award of property made to the respondent.

He complains too, that the judgment is defective in form and cannot be sustained. In order to properly present these issues it will be necessary to ascertain the character and extent of the property at the time of the separation of the parties, and to give a brief history of this aspect of their relations.

The appellant stated that at the time of the marriage in 1930 he was the owner of approximately 4,300 head of sheep, 150 head of cattle and had in a commercial account some sixteen thousand, eight hundred dollars. At that time the appellant was engaged chiefly in speculation, that is, in the buying and selling of sheep.

The appellant continued to speculate until the years 1936 and 1937, and was occupied the greater portion of his time with that business, though beginning with 1933 he also operated a band of sheep of between 1,000 and 1,200 head for the purpose of producing wool and sheep for sale.

In 1933 the appellant acquired at a cost of approximately $3,500 a three-fourths interest in what was known, and will be hereafter referred to as the Kallenbach Ranch. This was a ranch of approximately 160 acres near Fallon, Nevada, and prior to her death had been the property of respondent's mother. The three-fourths interest appellant acquired represented the one-fourth interest of each of respondent's two sisters and the interest of one brother as heirs of Mrs. Kallenbach. The respondent retained her one-fourth interest, and at

the time of the separation was the owner of an undivided one-fourth interest in and to the Kallenbach Ranch. A few years after acquiring this ranch the appellant improved the property and expended some fourteen thousand dollars in so doing.

During the years 1936 and 1937 the nature of appellant's operations changed, and from then until the parties separated the appellant ceased speculating and began operating several bands of sheep and a small herd of cattle for the production of sheep, cattle and wool. At about that time the appellant began acquiring a group of ranches, and within the next five to six years acquired a number of small ranches, all of which are situate in Churchill County. The Kallenbach property was established as the operating headquarters of this group of ranches, and thus the separate holdings became integrated into one operating unit. At the time of the separation the appellant was using these ranches from which to operate four separate bands of sheep, of approximately 1,000 head each, and a herd of cattle of approximately 400 head.

We find it unnecessary to describe the ranching properties in detail, and need only note here that they exceeded 2,000 acres in area, and have been improved and equipped for the purpose of integrating all in one operating unit. These ranching properties carry the customary range and water rights.

The value of the ranches, equipment and stock was estimated to be between $150,000 and $170,000. We have no way of learning from the record, with exactness, what was the annual gross income from the operation of these properties, but a fairly close check is furnished by the deposits made to appellant's commercial account in a bank at Fallon, Nevada. For the year 1937 deposits totalling the sum of $38,150 were made; for the year 1938, $31,113; in 1939, $24,899; in 1940, $40,300; in 1941, $30,121; in 1942, $69,483; in 1943, $78,469; in 1944, $63,141; in 1945, $56,514; in 1946, $50,720; and in 1947, $53,790.

In the foregoing estimate of value and description of the property we have not included items of established value. These include a note secured by a mortgage in the amount of twelve thousand dollars, and an obligation evidenced by a promissory note in the amount of fifteen hundred dollars, nor have we included a family automobile.

There was in addition to all the above-described properties certain savings accounts, and appellant admitted to having in his control and possession in 1947, or thereabouts, approximately eighty thousand dollars, which sum represented the receipts from sales made in 1947, and withdrawals from various savings accounts. From this sum also should be deducted, however, twelve thousand dollars, which is accounted for by the note and mortgage noted above.

The record shows, too, that on only two occasions did appellant find it necessary to borrow money. In 1933, shortly after purchasing the Kallenbach property, he borrowed five thousand dollars and gave as security approximately 3,400 head of sheep, and during the year 1947 he repaid a loan of approximately fourteen thousand dollars.

We do not have, and the record will not furnish, a clear picture of the appellant's money transactions, as the appellant was unable or reluctant to account for funds on hand at the time of separation. Nor can we arrive at any definite average as to annual net income, as the appellant furnished income tax returns for only two years, and could not do more than make a rough guess at his expenses for the other years. The withdrawals from his commercial account are not a reliable index since admittedly from time to time sums were withdrawn, to be later deposited in savings accounts.

The trial court found that, "There is both community and separate property belonging to each of the respective parties." The property was disposed of in the following manner. The respondent was awarded the Kallenbach Ranch, together with sufficient equipment

to operate it, or, in lieu thereof the appellant was given an option to purchase the ranch for thirty thousand dollars within thirty days after judgment, provided that if the appellant should take such option the respondent was to purchase with the thirty thousand dollars a small ranch for the benefit of herself and children who lived with her. The court directed that the appellant pay to the respondent immediately the sum of ten thousand dollars, and in addition thereto the sum of seventy thousand dollars, in seventeen equal, annual installments. To assure the payment of the latter award, the court declared that the seventy thousand dollars was to be a lien upon all of the property of the appellant until paid.

After making this award to the respondent the court made the following award to the appellant: "That the defendant be awarded all of the remainder of the properties described and testified to in the action and known as Cherry Valley, War Canyon, Boyer's Ranch, Artesian Well, Shoshone Springs, Clan Alpine, Cold Springs and Alpine, and specifically described upon the assessment rolls of the assessor of Churchill County.

"Defendant may be awarded all sheep and cattle, machinery, equipment and feed racks used by him in the operation of the sheep and cattle business, and wherever the same may be situated provided that the plaintiff in the action may have such farm machinery and equipment as is now upon the Kallenbach property and used in connection with the operation and farming of said ranch, including one saddle horse, two head of stock horses, six head of milk cows or the equivalent thereof, fifty head of yearling sheep and one buck."

First of all the appellant has insisted in respect to the judgment that two separate and distinct judgments were entered by the trial court.

The trial court, shortly after the matter had been submitted, signed and filed a "Decision" in which it was determined that there was a marriage, seven children born the issue of the marriage, that there was both community and separate property belonging to each of the

respective parties, that the appellant had been guilty of extreme cruelty toward the respondent and that respondent should be awarded the care, custody and control of the four younger children, with the right of visitation in the appellant, and since the other three children were all over the age of fourteen years, each would be allowed to choose with whom he would live, reserving the right to the other party to visit. The court then stated that it would reserve for consideration for thirty days the question of support and maintenance of the children, division of the property, or an award from the separate property of appellant to respondent, and unless within thirty days the parties had agreed to these matters, the court would proceed to determine the same. The court then ordered that respondent have her necessary costs and disbursements, together with certain other costs which we will discuss hereafter.

Within a few days after the period allowed by the court, the court made and filed an "Opinion and Decision" in which all issues were disposed of by repeating the decision of an earlier date, and adding thereto the awards made to respondent, both of property and money for her support and for the maintenance and support of the children, and making a division of the property. The appellant argues that the court disposed of the matter when the first decision was filed and that there can be only one final judgment in the case.

As authority for his argument the appellant cites numerous cases for the rule that in this state the oral pronouncement or written decision is the final judgment and the subsequent formal judgment is evidence of it merely. 8794, N.C.L. 1929; Central Trust Co. of California v. Holmes Mining Co., 30 Nev. 437, 97 P. 390; Kondas v. Washoe County Bank, 50 Nev. 181, 254 P. 1080; Hilton v. Hymers, 57 Nev. 391, 65 P.2d 679. We have no quarrel with the appellant's authorities; that rule is firmly established in this state, but as we see the question presented here, it is concerned more with what is a final judgment. The statute states that a judgment is

"the final determination of the rights of the parties in the action or proceeding." It would follow that an order which does not determine all the rights of the parties, or, which reserves a question for future consideration and determination, is not a final judgment. This court has so held in a number of cases. State v. Logan, 1 Nev. 509, 513; Lake v. King, 16 Nev. 215; Perkins v. Sierra Nevada Silver Min. Co., 10 Nev. 405; Magee et al. v. Whitacre et al., 60 Nev. 202, 96 P.2d 201, 106 P.2d 751; Elsman v. Elsman, 54 Nev. 20, 28, 3 P.2d 1071, 10 P.2d 963. We have nothing to add to this general rule, that a judgment is final that disposes of the issues presented in a case, and leaves nothing for future consideration of the court, except to point out that in view of the statutory definition of a judgment in this state that when the court does not dispose of all the issues presented by the case, and reserves any issue presented by the case for future consideration, it is in fact entering an interlocutory order and not an interlocutory judgment. Nor should such an order be confused with a final judgment which may require an order to carry it into effect or those instances in which the court reserves the right to modify the judgment. The so-called "Decision" made a few days after the matter had been submitted was, therefore, an interlocutory order, and the later opinion and decision became the judgment of the court.

The form of the judgment used by the trial court is also attacked by the appellant in respect to the award made by the court to the respondent of the Kallenbach Ranch. The court used the following language: "The plaintiff in the action is hereby awarded and decreed to have the full title in and to the Kallenbach Ranch so-called, together with the necessary farm equipment and machinery now upon said premises and used in the operation and farming of said premises, or in lieu thereof, and within thirty days hereof, the defendant in the action may pay to the plaintiff the sum of thirty thousand dollars ($30,000.00) in lawful money of the

United States of America, and with said sum the plaintiff will be required to purchase a small ranch for the benefit of herself and her minor children.

"That the defendant be awarded all of the remainder of the properties described and testified to in the action, and known as Cherry Valley, War Canyon, Boyer's Ranch, Artesian Wells, Shoshone Springs, Clan Alpine, Cold Springs and Alpine, and specifically described upon the assessment rolls of the Assessor of Churchill County.

"Defendant may be awarded all sheep, cattle, machinery, equipment and feed racks used by him in operations of the sheep and cattle business, and wherever the same may be situated, provided that the plaintiff in the action may have such farm machinery and equipment as is now upon the Kallenbach Ranch and used in connection with the operation and farming of said ranch, including one saddle horse, two head of stock horses, six head of milk cows or the equivalent thereof, fifty head of yearling sheep and one buck." The appellant avers that the foregoing is a judgment in the alternative, is uncertain and therefore void.

The vice of such a judgment seems to be that it does not fix the rights of the parties. It would seem, however, that unless a judgment is defective for that reason it should be allowed to stand. This form of judgment has been used and approved in actions involving the right to possession of personal property, and modern practice permits the use of a similar form in other actions where the judgment is definite and certain. 49 C.J.S., Judgments, sec. 73, page 192; Parish v. McConkie, 84 Utah 396, 35 P.2d 1001; Peterson v. Overson, 52 Ariz. 203, 79 P.2d 958.

"The legal operation and effect of a judgment must be ascertained by a construction and interpretation of it. This presents a question of law for the court. Judgments must be construed as a whole, so as to give effect to every word and part. The entire judgment roll may be looked to for the purpose of interpretation. Necessary legal implications are included although not

expressed in terms, but the adjudication does not extend beyond what the language used fairly warrants. The legal effect, rather than the mere language used governs. In cases of ambiguity or doubt, the entire record may be examined and considered. Judgments are to have a reasonable intendment. Where a judgment is susceptible of two interpretations, that one will be adopted which renders it the more reasonable, effective and conclusive, and which makes the judgment harmonize with the facts and law of the case, and be such as ought to have been rendered." Aseltine v. District Court, 57 Nev. 269, 62 P.2d 701, 702.

The appellant considers the judgment in this instance to be uncertain in at least two respects. (1) That it is not clear whether upon the payment of thirty thousand dollars the appellant is to have the Kallenbach Ranch, together with the necessary equipment and stock for its operation, or, the Kallenbach Ranch without the stock. (2) That it is not clear whether the Kallenbach Ranch was awarded to the respondent in trust for the support of herself and the minor children who reside with her.

If the appellant considers his position uncertain under the original judgment, he cannot complain about the formal judgment. That portion concerned with the Kallenbach property reads — "It is further ordered, adjudged and decreed that the plaintiff should have, and she is hereby given and granted, and awarded and decreed the full right, title, ownership and interest of, in and to the undivided three-fourths interest of that certain ranch located in the County of Churchill, State of Nevada, commonly known as and called the Kallenbach Ranch, and hereinafter more particularly described, together with the necessary farm equipment and machinery now upon said premises and used in the operation and farming thereof, including, but without being limited to, one saddle horse, two head of stock horses, six head of milk cows or the equivalent thereof, fifty head of yearling sheep and one buck, in trust for her and the minor children hereunder awarded to her, and who may

hereafter elect to come within her custody, as and for the support, maintenance of the plaintiff and said minor children, without any right, title, claim or interest therein by or on behalf of the defendant; or, in lieu thereof, and within thirty days from the date hereof, the defendant may pay to the plaintiff for said premises and said personal property, immediately hereinbefore described, the sum of thirty thousand dollars, lawful money of the United States of America, in which event plaintiff shall transfer said ranch and said personal property to the defendant. And further, in which event the monies so received therefrom, or any property which may thereafter be acquired as a result of said monies, be likewise set aside in trust as aforesaid."

 If we concede that appellant's rights under the original decision are uncertain, we find no such defect in the final judgment of the trial court. His rights are by that judgment made explicit. Unless the result is that increased obligations have been imposed or his rights under the decision impaired by the formal judgment, we think the appellant's exception to the judgment should be overruled. We reach that conclusion despite the rule that any conflict between the original judgment and the formal judgment must be resolved by adopting the terms of the original. Silva v. District Court, 57 Nev. 468, 66 P.2d 422. We hasten to point out, however, that in our opinion the terms of the original decision do not exclude the additional provisions of the formal judgment. The latter are in fact complementary to the original decision because if we examine the original decision it is impossible to say what exactly the appellant was to receive for his thirty thousand dollars. It is made plain by the formal judgment that appellant, in such an event, is to have the real property, the equipment and the stock. We are unable to see any enlargement of appellant's burden but we perceive at once that all doubts have been resolved in favor of appellant.

The appellant is obligated to pay thirty thousand dollars if he desires to retain the Kallenbach Ranch. His

obligation in that event is fixed and certain, and by the terms of the judgment his rights become equally certain. It is the respondent who stands to lose on this error; the formal judgment eliminates any claim to the stock in the event appellant elects to purchase. It is also plain that if the appellant does not exercise his option, the rights of the parties are fixed and certain under the original judgment. In that event the respondent is to have the real property and the equipment, "together with the enumerated stock."

█ Finally, we do not think the defendant should be heard to complain as to any uncertainty he may find in the original judgment as to whether the Kallenbach Ranch, the equipment and stock, or, the sum of thirty thousand dollars was awarded to the respondent as her separate property, or as a trustee for the benefit of herself and the minor children. The appellant will not lose nor gain in any event individually. Whatever the appellant may choose to do, his rights are now fixed and certain. He must give up the Kallenbach Ranch, the equipment and stock, or, pay respondent thirty thousand dollars and have conveyed to him the Kallenbach Ranch, the equipment and stock.

█ Our obligation under such circumstances is plain. We must affirm unless the error complained of is substantial. Whenever substantial justice is done, a technical error, which has worked no injury, will not warrant reversal. Section 8622, N.C.L. 1929. Paterson v. Condos, 55 Nev. 260, 30 P.2d 283; Ray v. Robertson, 55 Nev. 397, 36 P.2d 76; Santino v. Great American Insurance Co., 54 Nev. 127, 9 P.2d 1000; Hartford Mining Co. v. Home Lumber & Coal Co., 61 Nev. 1, 107 P.2d 128, 114 P.2d 1091.

The appellant insists error of a substantial nature resulted from the trial court's division and award of the property. It is his contention that all of the property possessed by the parties at the date of the separation was his separate property, and had its source in the property owned by him at the date of the marriage, save

and except, of course, the one-fourth interest in the Kallenbach Ranch owned by respondent.

The trial court, as we have said, reached the conclusion that there was both separate and community property belonging to each of the respective parties, and indicated in its opinion that it considered the Kallenbach Ranch community property. The court concluded also that regardless of the character of the property, it could properly award to the party least at fault a portion of the other's property. Whether or not this conclusion is justified if the trial court's conclusion is proper on any theory, and is sustained by the findings and evidence, it is the duty of this court to affirm. Goldsworthy v. Johnson, 45 Nev. 355, 204 P. 505. We have in mind also the rule that the opinion of the trial court is no part of the judgment, and can only be used to aid the court in a proper determination of the appeal. Hunter v. Sutton, 45 Nev. 430, 205 P. 785. The finding is, we have stated above, and we have also set it out above almost word for word, the judgment of the trial court. Although it is perhaps better practice, and the safer course in divorce actions, to make special findings as the basis of the decree, Davis v. Davis, 54 Nev. 267, 13 P.2d 1109; Phelps v. Phelps, 2 Wash.2d 272, 97 P.2d 1080, the appellant has not complained of that and cannot now do so, and so we now concern ourselves with these questions. Paterson v. Condos, supra. Has the proper conclusion been reached, and is that conclusion supported by the findings and the evidence?

We have heretofore related in some detail the facts concerning the acquisition of the property possessed by the parties, and operated as a stock raising venture at the date of the separation. The Kallenbach property was the first acquired by the parties, but the appellant insists that it cannot be dealt with as a separate item as it became the headquarters and an integral part of a system of ranches. This is perhaps true to a certain extent, but that does not forbid determining whether it is community or separate property.

The appellant has not contended, nor do we see how he could, that the one-fourth interest in the ranch inherited by the respondent was community property. On the other hand, we have concluded that the three-fourths interest acquired by the appellant was his separate property. The testimony of the appellant was that he owned at least four thousand head of sheep, one hundred fifty head of cattle and $16,800 at the time of the marriage. Against this we have his admission that shortly after the purchase of the Kallenbach Ranch was consummated it was necessary for him to mortgage his sheep. Other than this we have taken into consideration his testimony to the effect that from the date of the marriage to the date of this purchase conditions were extremely bad in his business, and as a speculator he often did not make expenses. If there were no profits to be made during these years, the purchase price of the property could not have come from any other source than appellant's accumulations prior to his marriage.

It is also probably true that for some time after 1933 the profits from appellant's business continued to be small. But, as we say, appellant had apparently reached the limit of his separate resources, except for his stock, and it is obvious that when in later years he began acquiring additional ranching property he was possessed of some ready money and credit. We can reach no other conclusion than that the appellant's capital, skill and industry as either an operator or a speculator in the stock business contributed materially to the profits and eventually to the capital gain. Had this increase in capital assets resulted solely from the original investment of stock and money made by appellant, it would have remained the appellant's separate property, but admittedly the appellant was engaged during all the years of this marriage in either speculation or the operation of raising stock for sale. His time and skill contributed, therefore, to the gains made, and this contribution became so intermingled with that from his separate

estate as to make a determination of the character of the gains finally realized impossible. For many years it has been recognized that the earnings of either a husband or a wife are community property; it is also accepted that if the skill and efforts of either party, or both, are essential to the profits gained from the operation or management of separate property, then in at least a part the profits are community property. Lake v. Lake, 18 Nev. 361, 4 P. 711, 7 P. 74. There can be no doubt that the appellant's and respondent's efforts and appellant's skill contributed materially to the profits gained. Apparently no attempt was made by him to keep the separate and community property segregated, and that now makes it impossible to determine what is community and what is separate property. The rule under such circumstances is that such intermingled properties are considered community properties, and we apprehend the basis of this rule to be that the properties have become so mixed and intermingled that it is no longer possible to determine their source. It is the duty of the husband, as the manager of the community property, to keep the community and separate property segregated. Barrett v. Franke, 46 Nev. 170, 208 P. 435, deFuniak Principles of Community Property, Vol. 1, p. 144, sec. 61, also at p. 200, sec. 77; In re Gulstine's Estate, 166 Wash. 325, 6 P.2d 628.

██ Thus the evidence supports the finding that there is both community and separate property, and while the statute supporting the trial court's theory that a court may award to the party least at fault a portion of the other's property has been repealed, Stats. 1939, p. 20, we do not believe in view of sec. 9463, N.C.L.Supp. 1931–1941, as amended, Stats. 1949, chap. 45, p. 54, the court was without authority to make such an award of the separate property for the support of the respondent and the minor children; that statute provides that in granting a divorce the court may also set apart such portion of the husband's property for the wife's support

and the support of their children as shall be deemed just and equitable. Nor, after studying all of the circumstances, nature and extent of the property do we think that the trial court erred in this award or any other made to the respondent.

We acknowledge the advantage to be gained by not dividing the property, and that a division would not only destroy its effectiveness as an integrated ranching operation, but its value as well. But as against that, the court probably weighed the respondent's need of some income-producing property for herself and the children residing with her, and her desire to live upon the property which had been her home and that of her family.

We do not think the price appellant is asked to pay is excessive, and in fact the purchase price fixed by the court was the value appellant placed upon the ranch. The solution arrived at by the court is not, therefore, unfair, and we deem it worthy of mention that this property, if retained by respondent, or the proceeds from this property, is to be devoted to the support of the appellant's children as well as the respondent.

While at first glance the award of eighty thousand dollars to the respondent, as her share of the community property, may seem out of proportion, other considerations compel us to approve that division of the community property. It was estimated by the appellant that the net value of the entire properties was between $150,000 and $170,000. From this we must deduct the sum of thirty thousand dollars as representing the value of the Kallenbach Ranch, leaving a balance of $120,000 to $140,000. Thus the sum of eighty thousand dollars seems to be more than a fair share of the community property. On the other hand the appellant accounted for some twenty-five thousand dollars in savings, and in addition a twelve thousand dollar note secured by mortgage, and an obligation of some fifteen hundred dollars. Another aspect of this problem is that despite the appellant's estimate of the value of the real and

personal property used in the ranching operations, the respondent was able to show that since 1937 the gross income was never under twenty thousand dollars, and in later years averaged double that. In view of that fact, and these additional facts—first, that in a period of not more than ten years, the appellant was able to acquire and pay for sizeable properties, secondly, despite his assertion that the cost of operating the properties was almost equal to the income, he admitted to savings amounting to twenty-five thousand dollars—we can see no error in the division of the community property.

■■ In directing the appellant to pay the respondent the sum of seventy thousand dollars, as aforesaid, the court further ordered that the payment of same be secured by a lien upon all of the property of the appellant until paid. The appellant insists the court was without authority to make such an order. We cannot agree, since this would in effect deny the court jurisdiction to make such orders as are necessary to make effective the judgment of the court considering all the circumstances of the case. This also seems to be in accord with the generally accepted rule that where the court awards property to one spouse, and a specified sum of money to the other, the property may be subjected to a lien to secure the amount awarded. Harner v. Harner, 255 Mich. 515, 238 N.W. 264; Kellogg v. Kellogg, 123 Or. 639, 263 P. 385; Bailey v. Bailey, 142 Wash. 359, 253 P. 121, opinion amended, Wash., 255 P. 132; Parker v. Parker, 55 Cal.App. 458, 203 P. 420; Bailey v. Bailey, 53 N.D. 887, 207 N.W. 987; Austin v. Austin, 143 Ark. 222, 220 S.W. 46.

The appellant insists the trial court failed to consider what the consequences of the judgment as a whole would be; he declares that the judgment will so impoverish him and reduce his operations to such an extent that the result will be that the benefits intended for the children and the respondent must necessarily be curtailed. More particularly and in relation to the actual situation, it is asserted that the lien on all his property will operate

to prevent his obtaining the credit he may require from time to time, that the payments to the respondent, together with the maintenance and support of the children, will so reduce his income that he will be unable to pay operating costs, and he asserts, finally, that he is placed in the impossible situation of being obliged to buy and pay for the Kallenbach Ranch in order to keep intact the ranching operation, yet has no property to offer as security for a loan of the necessary sum.

34, 35. In discussing the various awards and division of property we have already touched upon these points. We think it necessary to amplify what we have already said by pointing out that apparently the trial court was of the opinion that appellant's affairs are not as he described them, and we think there is evidence to support such a conclusion. It has already been pointed out that the fact that appellant was able to accumulate valuable units over a comparatively short period, and at the same time acquire savings in the neighborhood of twenty-five thousand dollars, indicates that he cannot be devoting his entire income to his operations, even if appellant considers expansion an operating cost. Further than this, we point out that, taking into account all sources of funds, the appellant was able in 1947 to get under his control the sum of eighty thousand dollars, which is exactly what was awarded to the respondent; that he has asked for, and been given the opportunity to keep his system of ranches intact at a cost fixed by himself; that the appellant enjoys annually an average gross income in the neighborhood of forty thousand dollars, and conceding that half of this is net income to the appellant, it leaves him ample to pay the cost of maintaining his children and respondent's award. We fail to agree that the trial court has impoverished appellant and enriched respondent, nor do we think the court has sacrificed a productive and growing business to accomplish a division of the property. Cunningham v. Cunningham, 61 Nev. 93, 116 P.2d 188. We conclude by pointing out that when circumstances are so changed

that the obligations to his children become burdensome or impossible, he may appeal to the court for relief and show such changed circumstances. Stats. 1947, c. 70, p. 271.

We made reference above to the award of costs made to the respondent in the district court. The order made by the court gave to her the costs and disbursements expended in the action, and provided further that said costs and disbursements were to include the cost of an abstract of the assessment rolls of Churchill County, and submitted in evidence, and the cost of procuring an abstract of the bank account of the defendant from his bank, at the court's request.

In Magee et al. v. Whitaker et al., 60 Nev. 202, 96 P.2d 201, 202, 106 P.2d 751, this court said: "This is an action in equity, and is clearly one in which the court is vested with discretion in the assessment of costs, under Section 8927, N.C.L. [1929]." The intent of this rule is that when the court is sitting as a court of equity it is not bound by the statute fixing costs as in other cases, but may exercise its discretion. The court may, of course, abuse such discretion in allowing costs, but we do not think the court did so in this case in allowing the cost of preparing evidence to be offered in support of the respondent's case, nor in the award of costs in preparing evidence requested by the court.

The appellant has also made some point of the fact in relation to costs, that the first cost bill was filed after the "Decision" was filed, and that the other cost bill was filed after the court had made and entered its "Opinion and Decision." In view of what we have said above, concerning the time within which a judgment becomes final, there is no error in allowing the timely filing of a cost bill after the "Opinion and Decision" had been entered.

The appellant has also assigned as error a number of rulings made by the court in respect to the admission of evidence. We have examined each of these and find no error which would affect the appellant in a substantial

right, or, which would tend to prejudice him materially.

On March 14, 1949, we allowed respondent an attorney fee of $1,000 to defend against appellant's appeal, ordered appellant to pay respondent's accrued hotel bill in the sum of $465.41, and further ordered appellant to pay the sum of $250 per month for the support of respondent and the minor children in her custody. 66 Nev. 67, 203 P.2d 614. On June 6, 1949 we denied respondent's motion for allowance of additional attorney fees and terminated the $250 monthly payments. 66 Nev. 72, 206 P.2d 753. In the former of these two orders we referred to the allowance made by the district court of $35 per month per child for the children in respondent's custody, which sum was provided to come out of a specific $10,000 allotment made by the district court in favor of respondent, and we also referred therein to an order made by the district court in August, 1948, for the payment by appellant to respondent of $500 per month and the fact that four of such $500 payments had been made, the last being in November, 1948; and we further stated in our order that any determination as to whether the monthly payments ordered paid by this court should be chargeable against the $10,000 item as allowed by the district court, might abide the determination of the appeal on the merits. The allowances made by this court were ordered upon what we considered was a sufficient showing of the respondent's necessities and appellant's ability to pay. The same grounds must necessarily have been the basis of the orders made by the district court. The sums made available by our present affirmance of the judgment now provide respondent with sufficient moneys for the items allowed by both courts. Accordingly all sums heretofore paid by appellant under the order for the payment of $35 per child per month for each child in her custody, and under the order for the $500 monthly payments and for the sum of $212.18, district court costs, and the $1,000 attorney fee, the $465.41 hotel bill,

and the amount of the $250 monthly payments allowed by this court, to the net aggregate extent under which such sums were actually paid, will all be credited against the $10,000 item identified as such in the district court's judgment.

█ Subject to such credit, the judgment and the order denying appellant's motion for new trial are hereby affirmed. Under the particular circumstances of this case we also feel that it is proper that each party pay his and her own respective costs on this appeal, and it is so ordered.

The district court ordered a stay of execution on the filing of a $20,000 supersedeas bond. Such stay order is hereby vacated.

HORSEY, C. J., and BADT, J., concur.

EATHER, J., being absent because of illness, the Governor designated Hon. TAYLOR H. WINES, Judge of the Fourth Judicial District, to sit in his place.

### ON PETITION FOR REHEARING
July 25, 1950.

*Per Curiam:*

Rehearing denied.